Argued and submitted October 4; judgment in A129217 affirmed; judgment in A129248 reversed December 26, 2007

Terry Fifi WEBB,
*Petitioner-Respondent,*

*v.*

Richard Raymond LOVETTE,
*Respondent-Appellant.*

0505-04669; A129217 (Control)

Donald Lee WEBB,
*Petitioner-Respondent,*

*v.*

Richard Raymond LOVETTE,
*Respondent-Appellant.*

Multnomah County Circuit Court
0505-04668; A129248

174 P3d 1082

Rankin Johnson IV argued the cause and filed the brief for appellant.

No appearance for respondents.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Riggs, Senior Judge.

BREWER, C. J.

## BREWER, C. J.

■     In these consolidated cases on appeal, Lovette, the respondent below,[1] seeks reversal of two separate stalking protective orders (SPOs) and judgments against him, one obtained by petitioner Terry Webb (A129217) and one obtained by petitioner Donald Webb (A129248). Respondent argues that neither petitioner adduced sufficient evidence for the court to impose the respective SPOs. We review the evidence *de novo*, giving deference to the trial court's express and implicit credibility determinations. *Castro v. Heinzman*, 194 Or App 7, 92 P3d 758 (2004). We affirm the SPO entered as to Terry and reverse the SPO pertaining to Donald.

The two SPO complaints were jointly tried. Petitioners and respondent are neighbors, but petitioners have found living next to respondent to be very unpleasant. Respondent's house has been raided by the police at least twice for methamphetamine manufacturing and distribution. At the time of the hearing, respondent was on parole and, according to his parole officer, respondent was considered a severe high risk to the community. He had made threats against various people, including parole officers, judges, and district attorneys. Respondent's parole officer considered the threats to be serious enough to necessitate notifying the threatened individuals.

When a new neighbor moved into the neighborhood, respondent told Terry that he was going to hit the new neighbor. Respondent's wife once sought Terry's aid with a cut and bleeding mouth after respondent "took her face and put it through a glass coffee table." Respondent, in speaking with his parole officer, also made threats against Donald and Terry, telling his parole officer on at least two different occasions that petitioners "would get what they deserve." The parole officer notified petitioners each time of those statements.

Terry testified that respondent came to her house one day and, referring to an elderly woman who had lived

---

[1] In stalking cases, we refer to the parties by their status in the trial court. We therefore refer to Lovette, the appellant before us, as respondent. *See Hanzo v. deParrie*, 152 Or App 525, 527 n 1, 953 P2d 1130 (1998), *rev den*, 328 Or 418 (1999).

across the street from petitioners, asked, "Is the old bitch dead?" He then told Terry "how he terrorized that old lady until she went into the hospital." Terry stated that respondent told her that she would "be next," and that "he was going to get [her]." She testified that respondent further said, "I'll get you guys, and in the middle of the night there's not going to be anything you can prove." Terry also recalled respondent telling her after his residence was raided for drugs, "I don't threaten. I just promise." Another time, Terry found that her doorknob had become loose. Respondent came to her home and said, "I told you you were going to be robbed next, and how were they going to go through that door." Terry stated that he also asked, "Well, how do you expect for me to get in that door with that kind of front door?" Terry testified that she was alarmed by that statement because of the other things that respondent had said to her in the past. In response to the question, "Why did [respondent] come to your house and tell you they have jingled your door?" Terry answered, "Because he says he can't get hurt, and there's nothing I can prove[.]"

Donald testified that, after the second drug raid at respondent's residence, respondent told Donald that "he would take care of things in the middle of the night without being able to prove it. And that there was nothing that the police could do about it." Another time, Donald found respondent pouring some liquid down a storm drain that looked "caustic" to Donald; he told respondent to stop pouring it down the drain. Respondent replied, "Hey. I'll take care of you. Don't worry about it." Respondent also told Donald that he "doesn't threaten. He promises." Donald testified that he understood respondent to mean that he would do something to Donald's property when Donald's back was turned or when he was asleep. Donald further testified that the statements caused him to fear for his personal safety. On a later occasion, respondent was hammering in the middle of the night and continued to hammer until morning. Donald saw respondent in the morning and asked him about the hammering, and respondent replied that Donald should mind his own business and that "[respondent] would take care of things." Donald again testified that the contact alarmed him because he felt that respondent might be using the noise to "cover

up—coming over to get my property * * * so when he banged on my window or my door, I would not pay attention."

Respondent argues on appeal that the evidence was insufficient to show that he engaged in repeated contacts with Donald that were unwanted. In addition, respondent argues that petitioners did not establish that he "threatened" them within the meaning of ORS 30.866. We need not address respondent's first argument because our resolution of his second argument is dispositive.[2]

ORS 30.866(1) provides:

"A person may bring a civil action in a circuit court for a court's stalking protective order or for damages, or both, against a person if:

"(a) The person intentionally, knowingly or recklessly engages in repeated and unwanted contact with the other person or a member of that person's immediate family or household thereby alarming or coercing the other person;

"(b) It is objectively reasonable for a person in the victim's situation to have been alarmed or coerced by the contact; and

"(c) The repeated and unwanted contact causes the victim reasonable apprehension regarding the personal safety of the victim or a member of the victim's immediate family or household."

ORS 163.730 provides definitions that are applicable to ORS 30.866(1), including:

"(1) 'Alarm' means to cause apprehension or fear resulting from the perception of danger.

"* * * * *

"(3) 'Contact' includes but is not limited to:

"(a) Coming into the visual or physical presence of the other person;

"* * * * *

"(e) Speaking with the other person by any means;

---

[2] We reject without discussion respondent's argument that, on *de novo* review, we should determine that petitioners were "not credible."

"(f) Communicating with the other person through a third person;

"(g) Committing a crime against the other person[.]

"* * * * *

"(7) 'Repeated' means two or more times."

In *Bryant v. Walker*, 190 Or App 253, 256, 78 P3d 148 (2003), *rev dismissed*, 337 Or 585 (2004), we explained:

"At a minimum, then, to obtain an SPO, [a] petitioner must prove by a preponderance of the evidence that respondent had two or more contacts with [the petitioner]; that at least two of these contacts alarmed [the petitioner]; that [the petitioner's] alarm was objectively reasonable; that respondent was aware of a substantial and unjustifiable risk that [the] petitioner did not want those contacts and consciously disregarded that risk; and that the contacts, cumulatively, caused [the petitioner] reasonably to fear for her personal safety."

The pertinent "contacts" between respondent and both petitioners in these cases consisted solely of a series of threatening statements that respondent made to petitioners. Where a respondent's "contacts" involve only expression,

"a civil SPO can constitutionally issue only if that expression or other associated conduct so unambiguously, unequivocally, and specifically communicated the respondent's determination to cause harm that an objectively reasonable person in the petitioner's situation would fear for his or her personal safety, or for the safety of a member of his or her immediate family or household."

*Hanzo v. deParrie*, 152 Or App 525, 544, 953 P2d 1130 (1998), *rev den*, 328 Or 418 (1999).

■ In Terry's case, we conclude that the evidence was sufficient to show that, on at least two occasions, respondent had unwanted contact with her by means of statements that unambiguously, unequivocally, and specifically communicated an intention to harm her and Donald and that her fear for her personal safety was objectively reasonable. Respondent approached Terry twice, telling her on the first occasion that he would terrorize her as he had her neighbor. On the second occasion, respondent intimated that he intended to

enter her house to commit robbery. It was objectively reasonable for Terry to apprehend respondent's statements as threats to her personal safety and, consequently, to be fearful. The trial court did not err in issuing the SPO pertaining to Terry.

We conclude, however, that the statements that respondent made to Donald did not unambiguously, unequivocally, and specifically indicate that respondent intended to harm Donald. His statements to Donald that he would "take care of things" were ominous but, unlike the statements to Terry, did not, standing alone, indicate a specific intent to harm Donald. Although it would be reasonable to assume that Donald was aware of the statements that respondent made to Terry, Donald elected in his petition to rely solely on the statements that respondent directly made to him and that respondent made to the parole officer. In light of that evidence and even considering Donald's general knowledge of respondent's behavior and personality, we cannot say that respondent's statements to Donald were sufficiently specific, unambiguous, and unequivocal to cause an objectively reasonable person to fear for his personal safety. Accordingly, we conclude that the trial court erred in issuing the SPO for Donald.

Judgment in A129217 affirmed; judgment in A129248 reversed.