Argued and submitted August 19, reversed December 10, 2008

Michele E. ROSS,
*Petitioner-Respondent,*

*v.*

Aaron R. HOLT,
*Respondent-Appellant.*

Lane County Circuit Court
180622915; A134886

198 P3d 437

Donald J. Molnar argued the cause for appellant. With him on the briefs was Coit and Dean, P.C.

James A. Palmer filed the brief for respondent.

Before Armstrong, Presiding Judge, and Schuman, Judge, and Rosenblum, Judge.

SCHUMAN, J.

## SCHUMAN, J.

In this appeal, respondent challenges the sufficiency of the evidence to support a permanent stalking protective order (SPO) issued against him. On *de novo* review, *Hanzo v. deParrie*, 152 Or App 525, 537, 953 P2d 1130 (1998), *rev den*, 328 Or 418 (1999), we reverse.

Between 2001 and May or June of 2005, petitioner and respondent lived together in an intimate relationship. During that time, petitioner gave birth to two children. Both petitioner and respondent believed that respondent was the father and, at the time of the hearing in this case, paternity had been neither established nor disproved. After respondent moved out of petitioner's residence in 2005, he continued to visit the two children, sometimes staying overnight in petitioner's living room.

In February 2006, petitioner's daughter told petitioner that respondent had touched her in a sexually inappropriate way. Petitioner reported that conversation to authorities. Respondent denied having done so and, in the weeks that followed, called petitioner to inquire about the status of the allegation. Ultimately, the sheriff's department declined to prosecute due to lack of evidence and, when interviewed by a counselor, the daughter denied that any abuse had occurred.

In March 2006, petitioner told respondent to stop calling. Respondent obliged that request for a short time, then started calling again and demanding to see the children. Petitioner told him that he could see the children if he would sign a paternity affidavit, which he refused to do. In May 2006, petitioner changed her phone number and listed the new number under a different name.

On September 28, 2006, petitioner found respondent in her front yard talking with her daughter. When asked by petitioner what he was doing there, respondent stated that he had been unable to contact petitioner by phone. Petitioner told respondent that he should leave. Respondent stated that he wanted parenting time and tried to hand petitioner some paperwork, which petitioner refused, stating, "You got to pay

to play." Respondent then (according to petitioner's testimony) "threatened to take the children from me and take custody from me," and told petitioner that "CSD" (*i.e.*, Children's Services Division) would be contacting her. Respondent testified that he mistakenly thought that "CSD" would be involved in his attempt to establish custody.

On November 17, 2006, respondent approached petitioner at the courthouse before a hearing concerning this SPO and asked where the children were and if they "had all their fingers and toes."[1]

At the conclusion of the SPO hearing, the trial court issued a permanent SPO on the basis of its findings that respondent had engaged in "repeated and unwanted contacts that caused [petitioner] to be concerned for the safety of herself or her children" and that, "given the children's age, * * * these were objectively reasonable fears." The court further clarified that, "given the age of the children and [petitioner's] responsibility to protect those children, as the children's parent, the Court finds that [respondent's] threat [to take the children] is, indeed, an unambiguous threat."

On appeal, respondent argues that the facts adduced at the hearing were legally insufficient to support the issuance of the SPO. We agree with respondent. ORS 30.866(1) provides that a person may obtain a civil SPO against a person if:

"(a) The person intentionally, knowingly or recklessly engages in repeated and unwanted contact with the other person or a member of that person's immediate family or household thereby alarming or coercing the other person;

"(b) It is objectively reasonable for a person in the victim's situation to have been alarmed or coerced by the contact; and

---

[1] From late August through October of 2006, petitioner was the victim in a series of vandalism incidents. Petitioner suspects that respondent was responsible. Respondent testified that he was in Wisconsin during most of the incidents, and his testimony was corroborated, for the most part, by testimony from his parents and girlfriend. We agree with the trial court that petitioner has not proved defendant's involvement; accordingly, we do not consider those acts, either as contacts themselves or as context in which to consider whether respondent's contacts with petitioner satisfy the statutory standard.

"(c)   The repeated and unwanted contact causes the victim reasonable apprehension regarding the personal safety of the victim or a member of the victim's immediate family or household."

Definitions for this statute are provided in ORS 163.730, under which a "contact" is defined as, among other things, "[c]oming into the visual or physical presence of the other person" or "[s]peaking with the other person by any means." ORS 163.730(3)(a), (e). If the contact at issue involves speech, however, Article I, section 8, of the Oregon Constitution requires proof that the contact constitutes a threat that "instills in the addressee a fear of imminent and serious personal violence from the speaker, is unequivocal, and is objectively likely to be followed by unlawful acts." *State v. Rangel*, 328 Or 294, 303, 977 P2d 379 (1999).

In this case, the record demonstrates the existence of several verbal communications between respondent and petitioner that allegedly caused petitioner fear: (1) respondent's phone calls to petitioner (after petitioner stated that she did not want to speak to respondent); (2) respondent's conversation with petitioner outside her home on September 28, 2006; and (3) respondent's conversation with petitioner at the courthouse on November 17, 2006. *See Bryant v. Walker*, 190 Or App 253, 256, 78 P3d 148 (2003), *rev dismissed*, 337 Or 585 (2004) ("repeated" means "at least two" contacts).

None of those contacts, however, communicated an unequivocal threat to petitioner, objectively likely to be followed by unlawful acts, that caused her to fear imminent and serious violence to herself or her children. Regarding the first contact, petitioner does not allege, nor does the record reflect any evidence, that respondent threatened petitioner or her children during his phone calls. As to the second contact on September 28, 2006, although respondent did threaten to take the children, that threat was not unequivocally one of "imminent and serious personal violence * * * objectively likely to be followed by unlawful acts"; rather, the testimony of both parties (and respondent's attempt to hand petitioner paperwork) suggest that respondent's intention was to seek legal custody of the children—indeed, petitioner's own testimony suggests that she understood respondent's threat as

such. Likewise, respondent's question whether the children "had all their fingers and toes" does not rise to the level of an unequivocal threat under *Rangel*; although disconcerting, the statement was not "objectively likely to be followed by unlawful acts."

The second and third contacts had nonexpressive aspects as well. In petitioner's front yard and at the courthouse, respondent "[came] into the visual [and] physical presence" of petitioner and her children. *See Castro v. Heinzman*, 194 Or App 7, 14-15, 92 P3d 758 (2004) (physically approaching petitioner was a nonexpressive contact even though respondent also spoke to petitioner). We conclude that neither of those contacts would "alarm[ ]" an objectively reasonable person or cause that person "reasonable apprehension" regarding her own personal safety or the safety of her children. Respondent had no history of violence or any other activity or trait that would cause a reasonable person in petitioner's situation to be alarmed by his coming into the presence of her or her children, nor is there any testimony from petitioner that she was, in fact, alarmed by his presence or that she had informed respondent that she did not want him to be in her presence. The trial court therefore erred in entering the permanent SPO.

Reversed.