Argued and submitted November 8, 2010, affirmed February 29, 2012

Thomas M. BLASTIC,
*Petitioner-Respondent,*

*v.*

Stephen R. HOLM,
*Respondent-Appellant.*

Coos County Circuit Court
08BC2667; A142443

273 P3d 304

Andy Simrin argued the cause for appellant. With him on the brief was Andy Simrin PC.

Roger Gould filed the brief for respondent.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

DUNCAN, J.

**DUNCAN, J.**

Petitioner sought, and was granted, a stalking protective order (SPO) against respondent. Respondent appeals, arguing that the trial court erred in considering respondent's speech and failing to require a culpable mental state with regard to petitioner's alarm from one of respondent's contacts of petitioner. We disagree. Therefore, we affirm.

Petitioner and respondent, who live in the same housing development, have opposing views regarding the authority of the development's home owners' association (HOA). That disagreement sparked animosity between the parties and led to the contacts at issue. Petitioner sought an SPO and, after a hearing, the trial court concluded that the statutory requirements were met.

On appeal, respondent challenges one of the trial court's legal conclusions, which we review for errors of law. *Travis v. Strubel*, 238 Or App 254, 256, 242 P3d 690 (2010). Specifically, respondent challenges the trial court's conclusion that an occasion on which respondent followed petitioner on a riding lawnmower was a qualifying "contact." Respondent concedes that a second incident, which took place at a community meeting, qualifies as a "contact." Because we reject respondent's arguments about the lawnmower incident, we conclude that two actionable "contacts" took place. Therefore, we do not address any other "contacts" on which the trial court may have relied.

For purposes of our review, we state the facts consistently with the trial court's findings, which are supported by evidence in the record.[1] *Travis*, 238 Or App at 256. The lawnmower incident took place on the main street of the development where the parties live. Petitioner, who wears a leg brace and walks with the assistance of a cane, was walking his dog in the street. Respondent came up behind or beside him on a riding lawnmower. Respondent said, "I want to talk

---

[1] Because the notice of appeal in this case was filed after June 4, 2009, the effective date of the 2009 amendments to ORS 19.415, we do not review the facts *de novo* unless we exercise our discretion to do so. *See* Or Laws 2009, ch 231, § 2. Respondent has not identified any reason that we should exercise our discretion. *See* ORAP 5.40(8)(b). Accordingly, we do not exercise our discretion to review *de novo*.

with you." Petitioner responded, "I have nothing to say to you. Leave me alone." As petitioner walked away, respondent followed him on the mower. Petitioner described respondent as being very close, on his heels. Three times, petitioner crossed the street, but respondent continued to follow him. Petitioner's dog was frightened by the noise of the lawnmower, and petitioner feared that the dog would pull him over and the lawnmower would hit him. Finally, respondent said, "If you don't stop it, things will get worse for you." Eventually petitioner's wife, who was driving by, pulled up beside petitioner and respondent. Respondent, still on his mower, came to the window of her car and said, "I'm going to tell you what I told your husband. You leave us alone, and we'll leave you alone."

The trial court concluded that respondent's actions were intended to intimidate or coerce petitioner. The court explained, "When you want to have a conversation with a person, you stop the lawnmower and you get off. * * * You don't ride * * * a riding lawnmower alongside a person who is attempting to avoid having the conversation. That's intimidating." Respondent's statement to petitioner's wife—"You leave us alone, and we'll leave you alone."—supported that conclusion. The court explained that that statement "certainly would suggest that [respondent] knew that being on a riding lawnmower, following along or beside * * * [petitioner] with his physical disabilities, would be intimidating." We presume that the court determined that respondent's intentional intimidation of petitioner made petitioner's alarm objectively reasonable.

The trial court issued the SPO under ORS 163.738(2)(a)(B), which provides that the court may enter a permanent SPO if it finds, by a preponderance of the evidence, that

"(i) The [respondent] intentionally, knowingly or recklessly engages in repeated and unwanted contact with the other person or a member of that person's immediate family or household thereby alarming or coercing the other person;

"(ii) It is objectively reasonable for a person in the victim's situation to have been alarmed or coerced by the contact; and

"(iii) The repeated and unwanted contact causes the victim reasonable apprehension regarding the personal safety of the victim or a member of the victim's immediate family or household."

The statute requires at least two unwanted contacts. ORS 163.730(7) (" 'Repeated' means two or more times."). In order to support the SPO, each contact must give rise to subjective alarm and that alarm must be objectively reasonable, and the contacts, cumulatively, must give rise to subjective apprehension regarding the petitioner's personal safety or the personal safety of a member of the petitioner's immediate family or household, and that apprehension must be objectively reasonable. *Bryant v. Walker*, 190 Or App 253, 256, 78 P3d 148 (2003), *rev dismissed*, 337 Or 585 (2004).

Respondent first argues that the trial court erred in considering his statement to petitioner's wife because it did not meet the high standard for speech-based contacts that the Supreme Court explained in *State v. Rangel*, 328 Or 294, 303, 977 P2d 379 (1999).[2] In that case, the court held that, in order to constitute an actionable "contact," speech must constitute a threat. A threat "is a communication that instills in the addressee a fear of imminent and serious personal violence from the speaker, is unequivocal, and is objectively likely to be followed by unlawful acts." *Id.* We agree with respondent that his statement to petitioner's wife—"I'm going to tell you what I told your husband. You leave us alone, and we'll leave you alone."—is not a threat as defined by *Rangel. See, e.g., Swarringim v. Olson*, 234 Or App 309, 314-15, 227 P3d 818 (2010) (the respondent's threats to have someone beat up the petitioner's son and slit his throat and

---

[2] As a preliminary matter, respondent argues that the trial court erred in considering the lawnmower incident because, he asserts, the wording of the citation that formed the basis for the proceeding limited the alleged "contacts" to those that took place at a community meeting. That argument, however, rests on a misreading of the citation. As a result of the failure of that factual premise, we do not address respondent's legal argument that the wording of the citation limits the scope of the proceeding.

Respondent does not argue that, even if respondent's conduct during the lawnmower incident gave rise to subjective alarm on petitioner's part, that conduct could not have given rise to alarm that was objectively reasonable. Nor does he argue that petitioner's apprehension regarding his personal safety from the unwanted contacts, cumulatively, was insufficient to give rise to a continuing reasonable apprehension regarding petitioner's personal safety.

his cursing at the petitioner's nine-year-old daughter while she walked to school were insufficient to meet the *Rangel* standard).

However, the fact that speech cannot serve as a "contact" in itself does not prohibit a court from considering it. Speech that does not meet the *Rangel* standard can provide "relevant context for * * * nonexpressive contacts." *Habrat v. Milligan*, 208 Or App 229, 237, 145 P3d 180 (2006). Here, the trial court considered respondent's statement to petitioner's wife as context that shed light on respondent's nonexpressive conduct: following petitioner with the lawnmower. In light of respondent's statement to petitioner's wife, the court found that respondent intended to alarm or coerce petitioner by following him. The court thus considered respondent's speech only as context for his nonexpressive conduct, not as a "contact" in itself. That was not error.

Respondent also argues that he lacked the required culpable mental state with regard to petitioner's alarm during the lawnmower incident.[3] He argues that nothing in the record supports the conclusion that he knew of a risk that petitioner was afraid that his dog would pull him over and he would be hit by the lawnmower.

However, no culpable mental state is required with regard to a petitioner's alarm. *Delgado v. Souders*, 334 Or 122, 131-32, 46 P3d 729 (2002). In *Delgado*, the petitioner lived close to the respondent and frequently saw him near her apartment and around the campus where she studied. As she continued to see him several times per day over the course of several months around her apartment building and the campus, she became concerned that the respondent was

---

[3] Respondent expresses his argument using the term "reasonable apprehension" rather than "alarm." We understand his argument to refer to alarm, however, because he indicates that *each contact* must give rise to reasonable apprehension. The language of the statute makes clear that a reasonable apprehension must arise from all of the contacts, considered together. *See* ORS 163.738(2)(a)(B)(iii) ("The *repeated* and unwanted contact causes the victim reasonable apprehension regarding the personal safety of the victim or a member of the victim's immediate family or household." (Emphasis added.)); *see also Bryant*, 190 Or App at 256 ("the contacts, cumulatively," must give rise to a reasonable apprehension regarding the petitioner's personal safety).

stalking her. She sought an SPO under the civil SPO statute, ORS 30.866(1), which provides:

"(1)   A person may bring a civil action in a circuit court for a court's stalking protective order or for damages, or both, against a person if:

"(a)   The [respondent] intentionally, knowingly or recklessly engages in repeated and unwanted contact with the other person or a member of that person's immediate family or household thereby alarming or coercing the other person;

"(b)   It is objectively reasonable for a person in the victim's situation to have been alarmed or coerced by the contact; and

"(c)   The repeated and unwanted contact causes the victim reasonable apprehension regarding the personal safety of the victim or a member of the victim's immediate family or household."

At the hearing on the SPO petition, the respondent testified that his daily routine took him by the petitioner's apartment building several times every day but that he had never noticed the petitioner and did not know that she was concerned by his behavior. The trial court granted an SPO, and the respondent appealed.

Before the Supreme Court, the respondent argued, *inter alia*, that the trial court erred in granting the SPO because he lacked the required culpable mental state with regard to the statutory requirements. As the Supreme Court explained, "The gravamen of [the respondent's] argument * * * concerns the mental-state requirement set out in ORS 30.866(1)(a), that is, whether [the petitioner] proved that [the respondent] acted with a necessary mental state respecting his contacts with her." *Delgado*, 334 Or at 131. To determine "the extent to which the requisite mental states set out in ORS 30.866(1)(a) apply to the remaining parts of that statute," *id.*, the court looked to the text of that provision, which, again, provides:

"(a)   The [respondent] intentionally, knowingly or recklessly engages in repeated and unwanted contact with the other person or a member of that person's immediate

family or household thereby alarming or coercing the other person[.]"

ORS 30.866(1)(a). Based on that text, the Supreme Court concluded that the legislature did not intend to require a culpable mental state with regard to the petitioner's alarm or coercion:

"As noted, ORS 30.866(1)(a) requires that a person accused of stalking in a civil proceeding 'intentionally, knowingly, or recklessly engage[ ] in repeated and unwanted contact with the other person * * * thereby alarming or coercing the other person.' At the outset, we observe that the word 'thereby,' which denotes causation, precedes the words 'alarming' and 'coercing.' *Consequently, the text of ORS 30.866(1)(a) demonstrates that the legislature did not intend to require any culpability on a [respondent's] part respecting any alarm or coercion that the recipient of the contact experiences*; rather, the terms 'alarming' and 'coercing' speak to the actual, subjective effect that a [respondent's] conduct has upon the recipient. *Compare* ORS 163.732(1) (crime of stalking requires that person 'knowingly alarm[ ] or coerce[ ]' another person or member of that person's family or household).

"The legislature did, however, impose a mental-state requirement in ORS 30.866(1)(a) respecting a [respondent's] conduct in *contacting* another person, by requiring that a [respondent] intentionally, knowingly, or recklessly 'engage[ ] in repeated and unwanted contact with the other person.' The placement of the adverbs 'intentionally,' 'knowingly,' and 'recklessly' immediately before the verb 'engage[ ]' demonstrates that those words modify the verb 'engage[ ].' Thus, the requisite mental states attach to the act of 'engag[ing]' in the contact in question with the other person, such as coming into the visual or physical presence of that person, or following that person.

"We further observe that the adjectives 'repeated' and 'unwanted' modify the object 'contact.' Because those adjectives serve to describe the type of contact in which a [respondent] intentionally, knowingly, or recklessly must engage, we conclude from the text that a [respondent] must act intentionally, knowingly, or recklessly respecting the repeated and unwanted nature of the contacts in question."

*Delgado*, 334 Or at 131-32 (citation omitted; first emphasis added; second emphasis in *Delgado*; alterations to statutory text in *Delgado*). Thus, under *Delgado*, a petitioner must prove that the respondent acts intentionally, knowingly, or recklessly with regard to the contacts and the fact that those contacts are repeated and unwanted. On the other hand, the legislature did not intend to require any culpable mental state with regard to the petitioner's alarm or coercion.

As the Supreme Court noted, the requirements of ORS 30.866(1)(a) are identical to those of ORS 163.738(2)(a)(B), the statute at issue here. *Id.* at 132 n 4 ("ORS 163.738(2)(a)(B) * * * sets out requirements for obtaining an SPO, following issuance of a criminal citation, that are identical to those set out in ORS 30.866(1)." (Citation omitted.)). Consequently, the court's analysis in *Delgado* applies equally to this case. Therefore, respondent's argument that he lacked a culpable mental state with respect to petitioner's alarm during the lawnmower incident is unavailing.

Affirmed.