754 January 28, 2026 No. 53

*This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).*

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

R. C.,
*Petitioner-Respondent,*

*v.*

VALENTE SANCHEZ,
*Respondent-Appellant.*

Hood River County Circuit Court
24SK00749; A184211

Karen Ostrye, Judge.

Submitted February 26, 2025.

Jeffrey M. Wallace filed the brief for appellant.

No appearance for respondent.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

PAGÁN, J.

Affirmed.

**PAGÁN, J.**

Appellant appeals from a judgment entering a stalking protective order (SPO) against him, asserting in his sole assignment of error that the evidence was insufficient to support the SPO. Because we conclude that the evidence was legally sufficient to support entry of the SPO, we affirm.

In SPO cases, "[w]e review the trial court's factual findings for any supporting evidence and its legal conclusions for legal error." *C. L. C. v. Cordell*, 318 Or App 654, 655, 508 P3d 73 (2022). "[W]e view the evidence and all reasonable inferences that may be drawn from it in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record is legally sufficient to permit that outcome." *Id*.

On January 20, 2024, appellant said on CB radio "Get me a pistol so that I can kill [petitioner]." CB radio conversations are openly broadcast and may be overheard by anyone who has a receiver. A friend of petitioner's overheard appellant and relayed the conversation to petitioner. Petitioner testified that after the threat, appellant twice drove by petitioner's house, which had the effect of causing petitioner apprehension.[1] Another witness testified that appellant said respondent's residence was approximately 60 miles from petitioner's residence.[2] The trial court, based in part on the address that appellant was served at, found the distance between their homes to be a 45-minute drive.

In February 2024, a different witness overheard another conversation on CB radio in which appellant generally badmouthed petitioner, stated that he would be glad to see petitioner hung off a bridge, and stated that he knew where petitioner lived and could send people there. Petitioner filed for an SPO. The trial court granted a preliminary SPO,

---

[1] We acknowledge that at one point, petitioner testified that the latest drive-by had been in early January, but at another point, he testified that the drive-bys were after he had already been threatened by appellant. Given the standard of review and the fact that the trial court found petitioner's witnesses credible, we draw the inference that at least one threat occurred prior to the drive-bys—as petitioner testified.

[2] Petitioner, in his SPO petition, indicated that he thought that the distance was perhaps 45 miles.

and then held a contested hearing in which petitioner presented, *pro se*, several witnesses. The court found petitioner's witnesses to be credible, found that the incidents had occurred as described, and concluded that the radio threats and the drive-by incidents all counted as contacts for the purpose of an SPO.

Appellant argues first that the CB radio conversations do not rise to the standard required under *State v. Rangel*, 328 Or 294, 977 P2d 379 (1999), which imposes a heightened standard for granting an SPO based on expressive contacts. Further, appellant argues that the conversations were not directly addressed to appellant, and appellant did not hear them first-hand, and thus they could not have been contacts. Second, appellant argues that the drive-bys were not contacts. We need not decide whether the radio conversations counted as contacts or met the *Rangel* standard because the drive-bys were sufficient contacts. In turn, there was sufficient evidence that the drive-bys put petitioner in reasonable apprehension for his personal safety. We thus affirm.

A trial court may grant an SPO when:

"(a)   The respondent intentionally, knowingly or recklessly engages in repeated and unwanted contact with the petitioner or a member of the petitioner's immediate family or household thereby alarming or coercing the petitioner;

"(b)   It is objectively reasonable for a person in the petitioner's situation to have been alarmed or coerced by the contact; and

"(c)   The repeated and unwanted contact causes the petitioner reasonable apprehension regarding the personal safety of the petitioner or a member of the petitioner's immediate family or household."

ORS 30.866. "'Repeated' means two or more times." ORS 163.730(9).

Appellant argues that the radio communications were not contacts. But, as we previously indicated, we do not need to determine whether they were contacts because petitioner testified that appellant twice drove by his house *after* petitioner was aware of appellant having threatened

him. Even if the January 20 threat was not a contact for the purposes of ORS 163.730(3), evidence that appellant had threatened to kill petitioner supports a conclusion that petitioner was reasonably apprehensive for his personal safety during the drive-bys—especially given that appellant had to drive some 45 minutes from his home to reach petitioner. *See* ORS 163.730(3) ("'Contact' includes but is not limited to: (a) Coming into the visual or physical presence of the other person."); *Blastic v. Holm*, 248 Or App 414, 419, 273 P3d 304 (2012) (non-qualifying speech may still provide context for a non-speech contact).

The prior threat, even if not sufficient by itself, thus provides context as to why the two drive-bys were sufficient to meet the two-contact minimum. Given the evidence of threats and harassment, petitioner's testimony as to his mental and physical state, and the distance between their houses, there was sufficient evidence that the two drive-bys put petitioner in reasonable apprehension for his personal safety, such that the trial court did not err by entering the SPO against appellant.

Affirmed.