Submitted January 21, affirmed May 27, 2009

Michaelis Diane WOOD,
*Petitioner-Respondent,*

*v.*

Kenneth Owen TROW,
*Respondent-Appellant.*

Multnomah County Circuit Court
070404780; A136206

208 P3d 1030

Spencer J. Hahn filed the brief for appellant.

No appearance for respondent.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

LANDAU, P. J.

**LANDAU, P. J.**

Respondent appeals a judgment and permanent stalking protective order (SPO), arguing that the record contains insufficient evidence of threatening conduct or communications to justify the issuance of the order. On *de novo* review, *Osborne v. Fadden*, 225 Or App 431, 433, 201 P3d 278, *rev den*, 346 Or 213 (2009), we affirm.

Petitioner resides with her fiancé, Lowrance. Respondent lives next door. His wife had moved out sometime in 2005, and he had lived alone there since then. On January 5, 2007, respondent saw petitioner in her yard and asked her for her telephone number. She gave him the number because they occasionally have "neighborly issues" to discuss, such as petitioner's dogs running onto respondent's property. Later that night, at approximately midnight, respondent called petitioner and left a message that he would like to get together with her, have some wine, and have the chance to get to know one another. Still later that same night, respondent left two more messages of a similar nature.

The following day, petitioner saw respondent in his car, parked in her driveway. He sat there for several minutes before he backed out and then parked on the street. Petitioner called the police. When Lowrance got home, a few minutes later, he and another neighbor went outside to confront respondent. Respondent got angry and "threatened to beat them up." When the police arrived, they told respondent to leave petitioner alone and that petitioner did not want him to contact her.

In February 2007, petitioner received in the mail a greeting card from respondent. The address on the envelope was a printed address label that had been cut out from another envelope and taped on the one used to contain the greeting card. And the return address was listed not as respondent, but petitioner's former employer. Inside, however, was a greeting card, the cover of which contained the words "Can't Take My Eyes Off of You." Inside, there was a typed message:

> "Hi baby, thank you for being so kind and understanding, making me feel like a whole man again, giving me the

strength to endure and fight for whats [*sic*] mine, I will never forget how loyal you were to me throught [*sic*] all the problems, i [*sic*] dearly love you for that alone, not counting the many outher [*sic*] things that made me appreciate your unique personality that made my love deepen for you."

There followed an invitation to have lunch, dinner, or a glass of wine, along with his telephone number. The card was signed "Love ken." It also contained a $75 gift card for Macy's department store. Lowrance later confronted respondent about the missive, and respondent said that he knew that it was petitioner's birthday and that "he kn[ows] everything about us." Petitioner was concerned not just because respondent had sent her the note, but also because he apparently had stolen mail from her mailbox to obtain the address label and because he had used a false return address.

At some unspecified time, respondent cut gaps into the bushes on his property that had previously obstructed the view from his house to petitioner's. Also at a time later listed as "a few months" before the filing of the petition for an SPO, petitioner and Lowrance observed respondent walking through their yard at approximately 2:00 a.m. with a "huge knife" in his hands with gloves on.

On April 21, 2007, Lowrance went to respondent's home and told respondent to leave petitioner alone. The discussion became heated. Respondent said that he was going to "kill either [Lowrance] or himself." The next evening, Lowrance heard what he thought were strange noises coming from respondent's property. He and petitioner observed through the gaps in the bushes respondent naked and masturbating. They called the police.

Several days later, petitioner filed her petition for an SPO. In her petition and in her testimony, petitioner said that respondent's repeated unwanted contacts caused her to fear for her personal safety and the safety of her fiancé. On the basis of that evidence, the trial court entered a judgment and permanent SPO.

■ On appeal, respondent contends that the evidence is legally insufficient. He suggests that the incident involving his parking briefly in petitioner's driveway before parking on

the street is unremarkable because they were, after all, next-door neighbors. As for the other contacts, respondent contends that they "were purely communicative in nature" and were not threatening in any way.

Under ORS 30.866(1), a court may enter an SPO if:

"(a)   The person intentionally, knowingly or recklessly engages in repeated and unwanted contact with the other person or a member of that person's immediate family or household thereby alarming or coercing the other person;

"(b)   It is objectively reasonable for a person in the victim's situation to have been alarmed or coerced by the contact; and

"(c)   The repeated and unwanted contact causes the victim reasonable apprehension regarding the personal safety of the victim or a member of the victim's immediate family or household."

A "contact," for purposes of the SPO statute, includes the following:

"(a)   Coming into the visual or physical presence of the other person;

"(b)   Following the other person;

"(c)   Waiting outside the home, property, place of work or school of the other person or of a member of that person's family or household;

"(d)   Sending or making written or electronic communications in any form to the other person;

"(e)   Speaking with the other person by any means;

"(f)   Communicating with the other person through a third person;

"(g)   Committing a crime against the other person;

"(h)   Communicating with a third person who has some relationship to the other person with the intent of affecting the third person's relationship with the other person;

"(i)   Communicating with business entities with the intent of affecting some right or interest of the other person;

"(j)   Damaging the other person's home, property, place of work or school; or

"(k)   Delivering directly or through a third person any object to the home, property, place of work or school of the other person."

ORS 163.730(3). To violate the SPO statute, the person making the unwanted contacts must act with a culpable mental state—intentionally, knowingly, or recklessly—and the contacts must be repeated. Thus, to obtain an SPO, a petitioner must establish, at a minimum, that, on at least two occasions, the person contacted the petitioner, was subjectively "aware of a substantial and unjustifiable risk" that the contact was "unwanted by the recipient, and then consciously and unreasonably disregard[ed] that risk." *Delgado v. Souders*, 334 Or 122, 133, 46 P3d 729 (2002).

■       Under Article I, section 8, of the Oregon Constitution, unwanted contacts that involve speech are subject to a heightened standard of proof. To qualify as a predicate unwanted contact, any contact that involves speech must constitute a threat—that is, the sort of communication that "instills in the addressee a fear of imminent and serious personal violence from the speaker, is unequivocal, and is objectively likely to be followed by unlawful acts." *State v. Rangel*, 328 Or 294, 303, 977 P2d 379 (1999). The kinds of threatening contacts that may support the issuance of an SPO do not include " 'the kind of hyperbole, rhetorical excesses, and impotent expressions of anger or frustration that in some contexts can be privileged even if they alarm the addressee.' " *Id.* (quoting *State v. Moyle*, 299 Or 691, 705, 705 P2d 740 (1985)).

        In this case, the evidence shows that—even assuming that the incident involving the temporary parking in petitioner's driveway was as unremarkable as respondent suggests—there were multiple unwanted contacts that were not of a purely communicative nature. Those incidents include the fact that respondent was observed wandering in petitioner's yard late at night with a "huge knife" and the fact that respondent had apparently stolen mail from petitioner's mailbox. In addition, there were the contacts that were, in fact, of a communicative nature, including the messages left in the middle of the night and the greeting card in which respondent speaks of a romantic relationship that is an

apparent fantasy. Those contacts may not have been overtly threatening in and of themselves. Nevertheless, they provide context for the other, noncommunicative contacts. *Habrat v. Milligan*, 208 Or App 229, 237, 145 P3d 180 (2006) (expressive contacts that may not be sufficient to support the issuance of an SPO, "nevertheless, are relevant context for respondent's nonexpressive contacts with petitioner"). Taken together, they form a pattern of behavior that understandably gave petitioner cause for concern. In addition, respondent overtly threatened Lowrance, with whom petitioner was living at the time, with violence—he told Lowrance on one occasion that he would beat him up and on a second occasion that he would kill him.

Respondent insists that, even if the record shows that he engaged in multiple unwanted and threatening contacts, it still does not show that he acted with the requisite intent. The record, however, shows that respondent was asked—by petitioner, by Lowrance, and by the police—to stop contacting petitioner and that, notwithstanding those repeated requests, he continued. It may be reasonably inferred from respondent's behavior that he acted intentionally, knowingly, or recklessly, at the very least.

In short, we conclude that the record is sufficient to support the issuance of a permanent SPO.

Affirmed.