Argued and submitted September 4, reversed November 18, 2009

Mahesh T. GIRI,
*Petitioner-Respondent,*

*v.*

Christy S. DOUGHTY,
*Respondent-Appellant.*

Lane County Circuit Court
180814294; A139680 (Control)

Norina M. GIRI,
*Petitioner-Respondent,*

*v.*

Christy S. DOUGHTY,
*Respondent-Appellant.*

Lane County Circuit Court
180814315; A139681

220 P3d 777

Jesse Wm. Barton argued the cause for appellant. With him on the brief was Hubert Duvall, Jr.

Respondents Mahesh T. Giri and Norina M. Giri waived appearance.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

LANDAU, P. J.

**LANDAU, P. J.**

This is a consolidated appeal of two stalking protective orders (SPOs). Respondent argues that the record contains insufficient evidence of threatening conduct or communications to justify the issuance of the orders. On *de novo* review, *Osborne v. Fadden*, 225 Or App 431, 433, 201 P3d 278, *rev den*, 346 Or 213 (2009), we agree and reverse.

The relevant facts are undisputed. Petitioners are husband and wife. They and their two children moved next door to respondent in 2005. Their neighborly relations began to deteriorate about a year later, when petitioners' dog injured respondent's dog. When respondent confronted petitioners about the attack, they denied that it had occurred. Shortly after that, respondent filed charges with the animal control authorities against petitioners.

Several months later, in the spring of 2007, petitioners and respondent were in their respective yards when they engaged in a heated argument. Respondent was intoxicated. She yelled obscenities at petitioners and told their children, who were also nearby, "Your parents are evil parents." The argument eventually calmed down. Respondent apologized for her behavior, and they engaged in a productive conversation. Respondent then dropped the animal control charges.

That fall, respondent saw petitioners' dog attack one of their own cats. When she told petitioners of what she had seen, petitioners apologized that she had witnessed that incident, but commented that "[d]ogs will be dogs." Petitioners then built a dog pen, and respondent believed that they were using it to control their dog. One day, when respondent thought the dog was locked in the dog pen, the dog ran up to the fence that divides the parties' properties and "scared [her] half to death." Respondent returned to her home, where she began drinking and eventually left what she admitted to be "some pretty bad messages" on petitioners' voice mail. Petitioners later called respondent and told her never to call their house again.

The next spring, in May 2008, respondent learned that her dog required additional medical treatment as a result of the earlier dog attack. Very upset by that fact,

respondent again became intoxicated and, while standing on her porch, played loud music and yelled obscenities "into the air." She also called petitioners' home several times, hanging up without leaving any messages "because they told [her she] can't." Respondent's behavior prompted petitioners to call the police.

A few weeks later, petitioners built a dirt bike track along the dividing fence line dividing the parties' properties, near respondent's bedroom window. One evening, when respondent was getting ready for bed, petitioners' children and their friends began riding their dirt bikes on the track. Respondent went outside and sprayed the children with water from a garden hose.

Petitioners each petitioned for an SPO against respondent based on the foregoing incidents. In their petitions, they stated that respondent "repeatedly harasses [them] and threatens to harm [their] family" and that her conduct causes them "anxiety and stress." The trial court entered the SPOs on a temporary basis. At a hearing to determine whether the SPOs should continue for an unlimited duration, the parties all testified. At the hearing, petitioners stated that they "prefer not to have any contact" with respondent and that the communications are "not good for [their] kids" and "affect[ ] the [family's] quality of life." The court continued the SPOs. One of the conditions of the SPOs is that respondent is not to come within the visual presence of petitioners, even though they are next-door neighbors.

On appeal, respondent contends that the evidence was legally insufficient to establish a minimum of two contacts to justify the issuance of the SPOs. In the alternative, respondent urges us to modify the SPOs because the current conditions of the orders would force respondent to move from her home to avoid violating them. Petitioners have not appeared in this appeal.

■ Under ORS 30.866(1), a court may enter an SPO if:

"(a) The person intentionally, knowingly or recklessly engages in repeated and unwanted contact with the other person or a member of that person's immediate family or household thereby alarming or coercing the other person;

"(b) It is objectively reasonable for a person in the victim's situation to have been alarmed or coerced by the contact; and

"(c) The repeated and unwanted contact causes the victim reasonable apprehension regarding the personal safety of the victim or a member of the victim's immediate family or household."

A "contact," for purposes of the SPO statute, includes the following:

"(a) Coming into the visual or physical presence of the other person;

"(b) Following the other person;

"(c) Waiting outside the home, property, place of work or school of the other person or of a member of that person's family or household;

"(d) Sending or making written or electronic communications in any form to the other person;

"(e) Speaking with the other person by any means;

"(f) Communicating with the other person through a third person;

"(g) Committing a crime against the other person;

"(h) Communicating with a third person who has some relationship to the other person with the intent of affecting the third person's relationship with the other person;

"(i) Communicating with business entities with the intent of affecting some right or interest of the other person;

"(j) Damaging the other person's home, property, place of work or school; or

"(k) Delivering directly or through a third person any object to the home, property, place of work or school of the other person."

ORS 163.730(3). Thus, to obtain an SPO, a petitioner must establish, at a minimum, that, on at least two occasions, the person contacted the petitioner, was subjectively "aware of a substantial and unjustifiable risk" that the contact was

"unwanted by the recipient, and then consciously and unreasonably disregard[ed] that risk." *Delgado v. Souders*, 334 Or 122, 133, 46 P3d 729 (2002).

▆▆▆ Unwanted contacts that involve speech are subject to a heightened standard of proof under Article I, section 8, of the Oregon Constitution. *Wood v. Trow*, 228 Or App 600, 605, 208 P3d 1030 (2009). To qualify as a predicate unwanted contact for the purposes of the SPO statutes, such contacts must constitute "communication that instills in the addressee a fear of imminent and serious personal violence from the speaker, is unequivocal, and is objectively likely to be followed by unlawful acts." *State v. Rangel*, 328 Or 294, 303, 977 P2d 379 (1999). " '[H]yperbole, rhetorical excesses, and impotent expressions of anger or frustration * * * in some contexts can be privileged even if they alarm the addressee.' " *Id.* (quoting *State v. Moyle*, 299 Or 691, 705, 705 P2d 740 (1985)).

In this case, petitioners relied on five incidents to establish the required unwanted contacts: (1) respondent's yelling obscenities at petitioners and telling petitioners' children, "Your parents are evil parents," in the spring of 2007; (2) the "pretty bad messages" that respondent left on petitioners' voice mail in the fall of 2007; (3) respondent's behavior on the porch in May 2008, when she played loud music and yelled obscenities "into the air"; (4) the hang-up phone calls in May 2008; and (5) the hose spraying that occurred a few weeks later.

▆▆▆ The first three of those incidents involve speech and are consequently subject to the heightened standard imposed by *Rangel*. The spring 2007 incident was nothing more than a heated exchange of words. While respondent's use of obscenities may have been offensive to petitioners and inappropriate in the presence of their children, there is no evidence that establishes an "unequivocal" threat that instilled in petitioners an objectively reasonable "fear of imminent and serious personal violence." *Rangel*, 328 Or at 303. Even though petitioners, in their SPO petitions, characterized respondent's conduct as "threatening," there is no evidence in the record that petitioners did in fact feel threatened by respondent's communications. Rather, petitioners merely expressed concern to protect their children from being

exposed to such communications. Petitioners testified, not that they feared for their personal safety, but that they "prefer not to have any contact" with respondent because it is "not good for [their] kids" and "affects [their] quality of life." Under *Rangel*, therefore, the spring 2007 incident does not constitute a predicate contact for the purposes of the SPO statute.

■ The same may be said for the "pretty bad messages" respondent left on petitioners' voice mail in the fall of 2007. Although petitioners told respondent never to call their home again, their actions do not demonstrate that the messages instilled in them the level of fear required by *Rangel*. Petitioners were not so alarmed to take any action other than calling respondent back to tell her never to call their home again. They did not testify that the messages caused them to fear serious and imminent personal violence from respondent. Under *Rangel*, therefore, the fall 2007 incident also does not constitute a predicate contact for the purposes of the SPO statute.

■■ We are also not persuaded that respondent playing loud music and yelling obscenities from her porch in May 2008 instilled in petitioners the level of fear required by *Rangel*, because respondent's words were not directed at petitioners. Under *Rangel*, a speech-based contact must be sufficiently "specific to the addressee that it convincingly expresses to the addressee the intention that [the threat] will be carried out." *Rangel*, 328 Or at 306 (emphasis omitted). In this case, respondent, upset by the fact that her dog required additional medical treatment, expressed her frustration by playing music and yelling obscenities "into the air." Respondent's words were not directed at petitioners and certainly did not express to petitioners that a threat would be carried out. Therefore, respondent's behavior on her porch in May 2008 also does not constitute a predicate contact for the purposes of the SPO statute.

That leaves two incidents that do not involve speech-based contacts, namely, respondent's hang-up calls to petitioners' home following her behavior on her porch in May 2008, and the water-spraying incident that occurred a few

weeks later. Because those incidents do not involve speech-based contacts, they are not subject to the heightened standard of *Rangel*. Thus, in order for these incidents to constitute predicate contacts for the purposes of the SPO statute, the evidence must establish that respondent, when she contacted petitioners, was aware of a substantial and unjustifiable risk that her contact was unwanted and then consciously and unreasonably disregarded the risk. *Delgado*, 334 Or at 133. Her contacts also must have alarmed or coerced petitioners, and that alarm or coercion must be objectively reasonable. ORS 30.866(1)(a), (b). Finally, those contacts also must have caused petitioners to suffer reasonable apprehension for the personal safety of them or their children. ORS 30.866(1)(c).

■ Respondent's repeated hang-up calls to petitioners' home do not meet those requirements. There is nothing in the record to establish that the hang-up calls caused petitioners reasonable apprehension for their own personal safety or the safety of their children. Instead, petitioners expressed only feelings of frustration and annoyance with respondent's conduct, saying that it "affect[ed] the quality of life" of their family. Thus, the hang-up calls do not constitute a predicate contact for the purposes of the SPO statute.

That leaves the water-spraying incident. We need not determine whether that incident suffices, however, because, even if it did, one qualifying contact is insufficient to justify the issuance of an SPO.

Additionally, we need not determine whether a modification of the SPO is appropriate, since the record does not support the issuance of the SPO in the first place.

Reversed.