Argued and submitted September 10, 1997; resubmitted September 30, 1998,
decision of Court of Appeals affirmed, judgment of circuit court reversed and
case remanded to circuit court February 26, 1999

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## EDUARDO TINOCO RANGEL,
*Petitioner on Review.*

## (CC 95-0127CM; CA A91166; SC S44151)

977 P2d 379

Andy Simrin, Deputy Public Defender, Salem, argued the cause for petitioner on review. With him on the briefs was Sally L. Avera, Public Defender.

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Durham, and Leeson, Justices.**

VAN HOOMISSEN, J.

** Fadeley, J., retired January 31, 1998, and did not participate in this decision; Graber, J., resigned March 31, 1998, and did not participate in this decision; Kulongoski, J., did not participate in the consideration or decision of this case.

## VAN HOOMISSEN, J.

■ The issue in this criminal case is whether Oregon's stalking statute, ORS 163.732, is overbroad in violation of Article I, section 8, of the Oregon Constitution,[1] or the First Amendment to the United States Constitution.[2] For the reasons discussed below, we hold that the statute is not overbroad under either constitution.

ORS 163.732 provides, in part:

"(1) A person commits the crime of stalking if:

"(a) The person knowingly alarms or coerces another person or a member of that person's immediate family or household by engaging in repeated and unwanted contact with the other person;

"(b) It is objectively reasonable for a person in the victim's situation to have been alarmed or coerced by the contact; and

"(c) The repeated and unwanted contact causes the victim reasonable apprehension regarding the personal safety of the victim or a member of the victim's immediate family or household."[3]

---

[1] Article I, section 8, of the Oregon Constitution, provides:

"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

[2] The First Amendment to the United States Constitution provides, in part:

"Congress shall make no law * * * abridging the freedom of speech * * *."

The First Amendment applies to the states by virtue of the Fourteenth Amendment. *Gitlow v. New York*, 268 US 652, 666, 45 S Ct 625, 69 L Ed 2d 1138 (1925).

[3] ORS 163.730 provides, in part:

"As used in ORS 30.866 and ORS 163.730 to 163.750, unless the context requires otherwise:

"(1) 'Alarm' means to cause apprehension or fear resulting from the perception of danger.

"(2) 'Coerce' means to restrain, compel or dominate by force or threat.

"(3) 'Contact' includes but is not limited to:

"(a) Coming into the visual or physical presence of the other person;

"(b) Following the other person;

"(c) Waiting outside the home, property, place of work or school of the other person or of a member of that person's family or household;

"(d) Sending or making written communications in any form to the other person;

Defendant was charged with stalking by "unlawfully and knowingly alarm[ing the victim] by coming to her place of employment and threatening her" on several occasions.[4]

Before trial, defendant demurred, contending that ORS 163.732 is overbroad in violation of Article I, section 8, and the First Amendment. The trial court held that the statute is overbroad, is not capable of judicial narrowing and, thus, is prohibited by Article I, section 8. The Court of Appeals reversed, concluding that ORS 163.732 is akin in virtually all material respects to ORS 166.065(1)(d) (1981), the harassment statute that this court upheld in *State v. Moyle*, 299 Or 691, 705 P2d 740 (1985).[5] The court construed and narrowed ORS 163.732 to require proof that the accused made a threat or its equivalent and that the accused intended to cause the victim alarm. The court held that, as so construed and narrowed, the statute is not overbroad under Article I, section 8, or the First Amendment. *State v. Rangel,*

---

"(e) Speaking with the other person by any means;

"(f) Communicating with the other person through a third person;

"(g) Committing a crime against the other person;

"(h) Communicating with a third person who has some relationship to the other person with the intent of affecting the third person's relationship with the other person;

"(i) Communicating with business entities with the intent of affecting some right or interest of the other person;

"(j) Damaging the other person's home, property, place of work or school; or

"(k) Delivering directly or through a third person any object to the home, property, place of work or school of the other person.

"* * * * *

"(7) 'Repeated' means two or more times."

[4] ORS 163.730(3) defines "contact" to include different acts, some of which are communicative in nature and some of which are not. Because the word "threatening" in the accusatory instrument connotes some form of speech or communication, we assume, for the purposes of this opinion, that there is a cognizable issue under the speech provisions of the state and federal constitutions.

[5] *Moyle* examined ORS 166.065(1)(d) for overbreadth. That statute, renumbered as ORS 166.065(1)(c) (1997), provides, in part:

"A person commits the crime of harassment if, with intent to harass, annoy or alarm another person, the actor:

"* * * * *

"Subjects another to alarm by conveying a telephonic or written threat to inflict serious physical injury on that person or to commit a felony involving the person or property of that person or any member of that person's family, which threat reasonably would be expected to cause alarm."

146 Or App 571, 934 P2d 1128 (1997). We allowed defendant's petition for review.

On review, defendant argues that ORS 163.732 is facially overbroad under Article I, section 8, because the alarm element of the statute does not require the state to prove that the defendant made a "threat," and because the statute does not require the state to prove that the defendant "intended" to harm anyone. Defendant further argues that the Court of Appeals' narrowing constructions cannot be attributed to the legislature with reasonable fidelity to the legislature's words and apparent intent and, therefore, the statute is invalid as enacted. *See State v. Robertson*, 293 Or 402, 411-13, 649 P2d 569 (1982) (to be valid, a narrowing construction must maintain reasonable fidelity to the legislature's words and apparent intent). In the alternative, defendant argues that ORS 163.732 violates the First Amendment. The state responds that the stalking statute is not overbroad, because the narrowing construction of ORS 163.732 adopted by the Court of Appeals follows the constitutional requirements delineated by this court in *Moyle*.

■■ We review a lower court's interpretation of a constitutional provision for legal error. We consider all questions of state law before reaching federal constitutional issues. *State v. Kennedy*, 295 Or 260, 262-65, 666 P2d 1316 (1983).

## I. ARTICLE I, SECTION 8

Our starting point is the analytical framework, first set out in *Robertson*, that this court traditionally has employed in evaluating the constitutionality of laws involving expression. *See State v. Stoneman*, 323 Or 536, 543-44, 920 P2d 535 (1996) (explaining and applying the *Robertson* framework); *City of Eugene v. Miller*, 318 Or 480, 488, 871 P2d 454 (1994) (same); *State v. Plowman*, 314 Or 157, 163-64, 838 P2d 558 (1992) (same).

■ Our first inquiry under the *Robertson* analysis is whether Article I, section 8, forecloses the enactment of ORS 163.732. Article I, section 8, forbids the enactment of any statute that is written in terms directed to the restraint of "free expression of opinion" or the restriction of "the right to

speak, write, or print freely on any subject" of communication, unless the restraint is wholly confined within some historical exception to the free speech guarantees. *Robertson*, 293 Or at 412. Article I, section 8, does not prohibit the enactment of statutes that focus on forbidden *effects* of expression, if they are not directed at the substance of expression. If the proscribed means include speech or writing, however, then even a law written to focus on a forbidden effect must be scrutinized to determine whether it appears to reach privileged communication or whether it can be interpreted to avoid such "overbreadth." *Id.* at 695-97, 702; *State v. Garcias*, 296 Or 688, 699, 679 P2d 1354 (1984) (concluding that, under *Robertson*, 293 Or at 437 n 32, a statute that reaches protected conduct only rarely when compared with its legitimate applications need not succumb to an overbreadth attack and may be interpreted as impliedly excluding the protected activity from coverage). An overbroad statute is one that proscribes speech or conduct that the constitution protects. *See Robertson*, 293 Or at 412-13 (discussing analysis of "overbreadth" claim).

The Court of Appeals concluded, and the parties agree, that ORS 163.732 is directed at the pursuit of forbidden effects (repeated and unwanted "contacts"). *Rangel*, 146 Or App at 574. We agree. However, because the law identifies expression as one means that may produce those forbidden effects, the law is open to an overbreadth challenge under Article I, section 8.

As *Moyle* illustrates, a law written to focus on undesired effects, but that includes speech or writing as the proscribed means of violation, must be examined to determine whether it reaches privileged communication and, if it does so more than rarely, then whether a narrowing construction is possible to save it from overbreadth.[6] If a statute passes

---

[6] In *State v. Spencer*, 289 Or 225, 611 P2d 1147 (1980), this court held that a disorderly conduct statute, ORS 166.025(1)(c), violated Article I, section 8, of the Oregon Constitution. The statute made the use of abusive or obscene language or making an obscene gesture in a public place criminal if done intentionally to cause "public inconvenience, annoyance or alarm, or recklessly creating a risk thereof." However, the statute did not require that the words spoken actually *cause* public inconvenience, annoyance or alarm. The statute made the speaking of the words themselves criminal, if spoken with the requisite intent, even if no harm was caused or threatened.

the first test (which is a determination of whether the statute was directed at the substance of any "opinion" or at the "subject" of communication) it remains open to an overbreadth challenge. A "law is overbroad to the extent that it announces a prohibition that reaches conduct which may not be prohibited." *Robertson*, 293 Or at 410 (citation omitted). Therefore, a law challenged as overbroad is scrutinized to determine whether it appears to reach communication privileged by Article I, section 8, or whether the law can be interpreted to avoid such overbreadth. *Moyle*, 299 Or at 702 (quoting *Robertson*, 293 Or at 418). Therefore, we examine the stalking statute to determine whether it is overbroad.

To commit the crime of stalking, a person must make unwanted and repeated, *i.e.*, at least two, "contacts" of the kinds set forth in ORS 163.730(3). Several examples of what may constitute a forbidden "contact" under ORS 163.730(3) consist solely of communication, orally or in writing, between the actor and the alleged victim or a third person. ORS 163.730(3)(d), (e), (f), (h), and (i) describe the methods of "contact" that most clearly involve some form of communication, although the statutory list is not exclusive. Our discussion here concerns only the state's invocation of at least one communication-based form of "contact" to establish the repeated and unwanted contact element of stalking. No overbreadth problem arises if none of the contacts on which the state relies to establish stalking involves communication.

The notable characteristic of the crime of stalking is that the victim's apprehension must arise from, and the actor must inflict alarm or coercion through, "repeated and unwanted" contacts. ORS 163.732(1). A single contact that causes apprehension, no matter how severe, does not constitute criminal stalking. But a contact that occurs through communication with the victim or a third person constitutes stalking if the actor also makes at least one other contact, the actor knowingly alarms or coerces the victim by engaging in the repeated contact, and the repeated contact is unwanted, causes the victim reasonable apprehension, and would have alarmed or coerced a reasonable person. The stalking statute does not require that a "contact" that occurs through speech or writing *by itself* (1) must constitute a use of words that the

law may prohibit, such as the solicitation of a crime, or blackmail, or (2) cause any particular proscribable effect.

We agree with the Court of Appeals that the stalking statute restricts speech, at least in part, because it criminalizes the inducement of alarm or coercion from the repetition of contacts with a victim and those contacts can include speech or writing. *Moyle* supports that conclusion. In *Moyle*, this court similarly determined that the statute in question, prohibiting harassment, defined the crime to include the communication of verbal threats, and concluded after analysis that some threats constitute protected speech. *Moyle*, 299 Or at 702. For similar reasons, the communication-based forms of contact listed in ORS 163.730(3) may constitute protected expression in a variety of political and social settings.

The fact that a speech-based contact may combine with a non-speech-based contact to induce apprehension does not obviate the overbreadth inquiry. In analyzing criminal statutes that forbid the inducement of undesired effects through communicative acts, this court steadfastly has required a showing that the communicative act itself is unprotected because, for example, it is a prelude to imminent and serious proscribable harm. *See Moser v. Frohnmayer*, 315 Or 372, 379, 845 P2d 1284 (1993), holding that, to be valid as a law that focuses on a harmful effect of speech, the law must specify expressly or by clear inference what serious and imminent effects it is designed to prevent. For example, *Moyle*, 299 Or at 703, construed the term "alarm" in the harassment statute to mean

> "more than mere inconvenience or feelings of anguish which are the result of angry or imposing words; it means being placed in actual fear or terror resulting from a sudden sense of danger."

In *Garcias*, 296 Or at 701, this court upheld the menacing statute against a claim of overbreadth, stating:

> "[t]here is harm to be caused, fear of imminent serious physical injury, and it is specific enough that it can be caused only by a narrow category of conduct, a face to face confrontation between actor and victim."

We cannot say that the instances of potential impermissible application of the stalking statute will be rare, in part because the range of communicative acts that the statutory term "contact" includes is quite broad. We turn to the question whether we can interpret the stalking statute to eliminate any overbreadth while maintaining reasonable fidelity to the legislature's words and apparent intent.

In *Moyle*, this court concluded that it could adopt several narrowing constructions of the harassment statute that would conform it to the legislature's probable intent, as demonstrated by the statute's words, and still satisfy the following requirement of Article I, section 8:

> " '[A]rticle I, section 8, prohibits lawmakers from enacting restrictions that focus on the content of speech or writing, either because that content itself is deemed socially undesirable or offensive, or because it is thought to have adverse consequences. * * * *[L]aws must focus on proscribing the pursuit or accomplishment of forbidden results rather than on the suppression of speech or writing either as an end in itself or as a means to some other legislative end.'* *State v. Robertson, supra*, 293 Or at 416." *Moyle*, 299 Or at 697 (emphasis in original).

For purposes of analysis under Article I, section 8, the Court of Appeals concluded that ORS 163.732 is not distinguishable from the harassment statute considered in *Moyle. Rangel*, 146 Or App at 578. Consequently, the Court of Appeals, addressing two aspects of the stalking statute, applied narrowing constructions that closely resemble the narrowing constructions this court applied in *Moyle*. We turn to an examination of those constructions.

First, the Court of Appeals determined that, although ORS 163.732 does not expressly require that a "threat" be made to the victim, the terms of ORS 163.730 and ORS 163.732 demonstrate that "a threat or its equivalent must have been made in order for the crime of stalking to be found." 146 Or App at 577. We agree.

■ The gist of the crime of stalking is knowingly alarming or coercing another through repeated and unwanted "contacts." Where the state relies on one or more "contacts" that constitute speech or writing, rather than

physical force or other behaviors that are beyond the scope of Article I, section 8, the definition of "coerce" in ORS 163.730(2) expressly requires proof of a threat. We conclude that in defining "alarm" in ORS 163.730(1), the legislature also contemplated, as a logical necessity, that a speech-based contact would be punishable as an element of stalking only if it constitutes a threat. If the contact in question amounts to communication by speech or writing, only a threat will be sufficient to "cause apprehension or fear resulting from the perception of danger," as ORS 163.730 requires.

*Moyle* explains what behavior constitutes a proscribable "threat" in this context. This court recognized that, in a number of settings, vigorous advocacy of conflicting viewpoints may create feelings of anger, fear, annoyance or loss of control, and that proof in a concrete case of specific factual criteria about the communication is necessary to demonstrate that the speaker's statement amounts to a proscribable threat. According to *Moyle*, a proscribable threat is a communication that instills in the addressee a fear of imminent and serious personal violence from the speaker, is unequivocal, and is objectively likely to be followed by unlawful acts. *See Moyle*, 299 Or at 703-05 (explaining those requirements for a "threat" under harassment statute). Those characteristics of a threat

"exclud[e] the kind of hyperbole, rhetorical excesses, and impotent expressions of anger or frustration that in some contexts can be privileged even if they alarm the addressee." *Moyle*, 299 Or at 705.

*Moyle* concluded that those characteristics of a proscribable threat were faithful to the legislature's intent by examining the elements of the crime of harassment. Because the material elements of stalking, particularly those in ORS 163.730(1) and ORS 163.732(1)(b) and (c), indicate that the legislature intended the term "alarm" in the stalking statute to apply to the same type of communications, we reach the same conclusion here.

Second, in response to defendant's argument that the stalking statute falls short because it requires the actor to induce alarm or coercion "knowingly" rather than intentionally, the Court of Appeals concluded:

> "[W]e interpret the stalking statute to require proof that the alarm as well as the threatened act must be intended by the speaker." *Rangel*, 146 Or App at 578.

As explained below, we adopt a somewhat different narrowing construction.

■ Defendant is correct that any judicial narrowing construction, adopted to address a statute's unconstitutional overbreadth, must keep faith with the legislature's policy choices, as reflected in the statute's words, and respect the legislature's responsibility in the first instance to enact laws that do not intrude on the constitutionally protected right of free speech. Defendant's claim that the Court of Appeals simply nullified the legislatively adopted mental element, "knowingly," in ORS 163.732(1)(a), and replaced it with a different mental element, "intentionally," that the legislature did not enact, raises at least a colorable argument that the Court of Appeals exceeded its authority to adopt a narrowing construction in order to eliminate overbreadth. Defendant's argument rests on the premise that, under the definitions stated in ORS 161.085(7) and (8),[7] "intentionally" and "knowingly" are substantively different mental states. He also contends that, in *Moyle*, this court's adoption of a mental element of "intent" did no violence to the legislative intent, because the statute there was silent regarding the need for a specific intent to carry out a threat. He points out that the stalking statute expressly adopts a mental element, "knowingly." ORS 163.732(1)(a).

ORS 163.732(1) uses the term "knowingly" to mean that a person acts with an awareness that his or her conduct is of a nature so described or that a circumstance so described exists, as ORS 161.085(8) indicates. The stalking statute also uses "knowingly" with reference to the conscious inducement

---

[7] ORS 161.085(7) and (8) provide:

"(7) 'Intentionally' or 'with intent,' when used with respect to a result or to conduct described by a statute defining an offense, means that a person acts with a conscious objective to cause the result or to engage in the conduct so described.

"(8) 'Knowingly' or 'with knowledge,' when used with respect to conduct or to a circumstance described by a statute defining an offense, means that a person acts with an awareness that the conduct of the person is of a nature so described or that a circumstance so described exists."

of an actual effect—fear—by creating a perception of danger in the victim through multiple unwanted contacts. The requirement in ORS 163.732(1)(b) that the perception of danger to personal safety from the actor's contacts be "objectively reasonable" establishes the foreseeability and, thus, the predictability, of the proscribed harm.

Because ORS 163.732(1) requires both awareness of the nature of the conduct and consciousness that the conduct predictably will lead to a specific result, the statute presents an analytical problem similar to that addressed by this court in the following passage regarding the harassment statute at issue in *Moyle*:

> "The statute, as written, requires neither proof of a specific intent to carry out the threat nor of any present ability to do so. However, the elements—actual alarm and the reasonableness of the alarm under the circumstances—have a similar purpose and effect. These elements limit the reach of the statute to threats which are so unambiguous, unequivocal and specific to the addressee that they convincingly express to the addressee the intention that they will be carried out." *Moyle*, 299 Or at 703.

The harassment statute in *Moyle* required communication of a threat "with intent to harass, annoy or alarm another person." That statute, as written, required neither proof of a specific intent to carry out the threat nor of any present ability to do so. The *Moyle* court concluded, however, that the elements of actual alarm and the reasonableness of the alarm under the circumstances had a similar purpose and effect.

> "These elements limit the reach of the statute to threats which are so unambiguous, unequivocal and specific *to the addressee* that they convincingly express *to the addressee* the intention that they will be carried out." *Moyle*, 299 Or at 703 (emphasis added).

The same analysis applies here.

ORS 163.732(1) requires that the actor "knowingly" alarm or coerce another person or a member of that person's immediate family or household. The statute does not expressly require that a contact involving communication be established with proof of a specific intent to carry out the

threat or of any present ability to do so. However, we conclude that the requirements in ORS 163.732(1) of actual alarm and the subjective and objective reasonableness of the alarm in the circumstances have the same purpose and effect. Just as in *Moyle*, those elements limit the reach of ORS 163.732(1) to a threat that is so unambiguous, unequivocal, and specific to the addressee that it convincingly expresses *to the addressee* the intention that it will be carried out.

Our analysis does not remove the mental element of "knowingly" from ORS 163.732(1)(a). Instead, we conclude that, under ORS 163.732(3), a contact based on communication must consist of a threat that convincingly expresses *to the addressee* the intention that it will be carried out, and that the actor has the ability to do so. Because that determination leaves the statutory mental element, "knowingly," undisturbed, and construes the contact element consistently with the analysis followed in *Moyle*, defendant's argument fails. Accordingly, we hold that, as construed, ORS 163.732 is not overbroad under Article I, section 8.

## II. FIRST AMENDMENT

Freedom of speech is among the fundamental personal rights and liberties protected by the First and Fourteenth Amendments. *Gitlow v. New York*, 268 US 652, 666, 45 S Ct 625, 69 L Ed 2d 1138 (1925). Defendant argues that ORS 163.732 is overbroad in violation of the First Amendment because it does not require proof that the actor intended to cause harm, does not require proof that the actor made an actual threat, and creates no express exemption for constitutionally protected activity.

Because defendant's first two arguments do not take into account the narrowing constructions that this court has applied to ORS 163.732, they are unpersuasive. Those constructions supply the requirements of genuine threat and intent to carry out the threat that defendant argues are missing from the statutory text.

Defendant also asserts that legislatures in other states have inserted specific exemptions in stalking legislation for legitimate free speech activity, such as labor picketing, in order to insulate their stalking laws from overbreadth

attacks. Oregon's stalking statute does not contain an exemption for all forms of "constitutionally protected speech," although it does expressly exempt conduct protected by state and federal labor laws. *See* ORS 163.755 (exempting conduct protected by state or federal labor laws).

However, defendant's argument does not identify a constitutional requirement that, if absent, demonstrates that the Oregon stalking statute is overbroad for that reason alone. For the purpose of addressing defendant's present argument, it is sufficient to observe that no decision of the United States Supreme Court requires that an express exemption for lawful speech accompany a stalking statute in order to avoid unconstitutional overbreadth.

In *Broadrick v. Oklahoma*, 413 US 601, 613-15, 93 S Ct 2908, 37 L Ed 2d 830 (1973), the United States Supreme Court set limitations on the invocation of the overbreadth doctrine where conduct and not merely speech is involved. The Supreme Court declared that application of the doctrine is "strong medicine," to be employed "sparingly" and "only as a last resort." Where conduct is regulated, a statute that has constitutional applications is facially invalid only if its overbreadth is "real, [and] substantial as well, judged in relation to the statute's plainly legitimate sweep." *Id.* at 415.[8] We conclude that, as construed, ORS 163.732 is narrowly tailored and does not burden protected speech. *See New York v. Ferber*, 458 US 747, 769, 102 S Ct 3348, 73 L Ed 2d 1113 (1982) (only a statute that is substantially overbroad may be invalidated on its face); *Broadrick*, 413 US at 615 (same). We hold that ORS 163.732 is not overbroad under the First Amendment.

---

[8] "But the plain import of our cases is, at the very least, that facial overbreadth adjudication is an exception to our traditional rules of practice and that its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from 'pure speech' toward conduct and that conduct—even if expressive—falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct. Although such laws, if too broadly worded, may deter protected speech to some unknown extent, there comes a point where that effect—at best a prediction—cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe." *Broadrick*, 413 US at 615.

In summary, we hold that, as construed, ORS 163.732 is not facially overbroad under Article I, section 8, or the First Amendment for any of the reasons argued by defendant. Our holding that ORS 163.732 is not overbroad does not preclude a constitutional challenge to the statute "as applied" to specific circumstances.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.