Argued and submitted July 24, reversed September 10, 2003

Glenn A. TUMBLESON,
*Respondent,*

*v.*

Eileen M. RODRIGUEZ,
*Appellant.*

18 02 15612; A119265

76 P3d 169

Donna M. Matthews argued the cause and filed the brief for appellant.

No appearance for respondent.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

LANDAU, P. J.

**LANDAU, P. J.**

Respondent appeals a judgment granting a petition for a permanent stalking protective order. She challenges the sufficiency of the evidence to support the issuance of the order. On *de novo* review, we reverse.

The parties shared an intimate relationship for some unspecified period of time. They ended the relationship in mid-2002. On July 12, 2002, respondent called petitioner to tell him that she was pregnant. Petitioner accused respondent of "cheating" on him and told her that he wanted nothing else to do with her, that he would agree to a DNA test to determine paternity once the child was born, and that, until then, he did not want to see her.

The following day, respondent showed up at petitioner's residence wanting to talk. At first, petitioner asked her to leave. But she insisted that she wanted to "talk calmly," and petitioner agreed. She spent the night and left the next day.

On July 14, respondent called petitioner. Petitioner's mother—who apparently lives in a trailer in petitioner's back yard—answered the telephone and advised respondent to "stop calling here." Respondent did not understand why petitioner's mother would say that, as respondent had just spent the night at the house. She returned to petitioner's house. The front door was locked. Respondent went around to the back and was greeted by petitioner's mother, who told respondent to leave. Respondent called petitioner's mother "cheap white trash," returned to the front, kicked a hole in the front door, and entered the house. Petitioner arrived and found respondent looking through his phone messages. He testified that, "I think she was just mainly looking for phone numbers or whatever."

On August 9, 2002, petitioner filed a petition for a stalking protective order. ORS 30.866. In the petition, he alleged:

"On 7-13-02 [respondent] was asked to leave property; she would not leave. When I got to my house she had let herself in & was coming out. I asked her to go. She would not leave

until I talked to her, got her to calm down & she left on 7-14-02. She came to my house while I was not there, trying to get [the] lock off [the] back gate. My mother told her to go she wasn't welcome there. She then went to [the] front of [the] house & kicked [a] huge hole in solid oak fr[on]t door. Verbally assaulted my mother & in past my daughter."

He also noted that, since August 5, 2002, his mother's truck had been dented, and the dogs have been "fus[s]ing late at night."

At the temporary stalking protective order hearing on August 9, petitioner testified that he needed the order because respondent "is a very violent person. Has a bad, very bad temper." When the trial court pressed for details, petitioner recounted the foregoing facts. The trial court issued the temporary order and ordered respondent to appear and show cause why a permanent order should not issue. ORS 30.866(2).

At the show cause hearing, petitioner testified that respondent was asked to leave his house on July 13, but that she insisted on talking. He said that he agreed to talk with her and that she left the following day. He testified that his mother reported to him that respondent returned to his home on July 14 and that his mother told respondent that she was not welcome. Petitioner added that he felt threatened because respondent had once been arrested for beating a boyfriend with a fireplace poker.

Respondent denied ever having been told not to return to the residence. She testified that respondent's mother had told her to stop calling respondent. The following exchange then occurred:

"THE COURT: There's no reason for you to go back there?

"[RESPONDENT]: No, sir.

"THE COURT: So what's the problem with leaving the Order in effect?

"[RESPONDENT]: I don't want it in effect because I think there's more about this than meets the eye.

"THE COURT: I don't care about that; I care about the fact you're not supposed to be there.

"[RESPONDENT]: I haven't been there. And I don't want the Order in effect because it's false allegations.

"THE COURT: I don't care about the allegations. What I care about is what you're, whether you should be ordered not to contact him. I mean, for whatever reason, he's made it clear he doesn't want to be contacted by you.

"Then there's no reason for you to contact him, is there?

"[RESPONDENT]: No reason, for me. I don't want to contact him. There's none. Any contacting that's going to be done in the future is going to be in front of a judge.

"THE COURT: Well, I'm going to leave the Order in effect for that reason, then. And you're just to leave him alone.

"[RESPONDENT]: I haven't messed with him.

"THE COURT: I'm telling you I'm leaving the Order in effect."

The court then entered a permanent stalking protective order. ORS 30.866(3)(a).

■ On appeal, respondent argues that the trial court erred in issuing the stalking protective order solely on the ground that she had expressed no reason to contact petitioner in the future.[1] She complains that the trial court failed to address whether petitioner had introduced evidence sufficient to satisfy the statutory standards for the issuance of an

---

[1] While the appeal was pending, petitioner filed with the trial court a form requesting an order allowing the voluntary dismissal of the stalking protective order and including a space for the court to check whether the motion is granted or denied. The trial court checked the space "motion granted" and signed the form. Under ORS 19.270, however, the trial court had lost jurisdiction over the cause upon the filing and service of the notice of appeal, except to decide requests for attorney fees, to enforce the judgment, or to exercise powers in connection with the appeal as are conferred by law. We are aware of no statute conferring on the trial court authority to dismiss a stalking protective order while an appeal as to its validity is pending. *See generally State ex rel Gattman v. Abraham*, 302 Or 301, 312, 729 P2d 560 (1986) ("The correct rule is * * * 'that after jurisdiction has been vested in an appellate court by the taking of an appeal the lower court cannot proceed in any manner so as to affect the jurisdiction acquired by the appellate court.' ") (quoting *State v. Jackson*, 228 Or 371, 382, 365 P2d 294 (1961)).

order and that the record contains no such evidence. We agree with respondent.

■     ORS 30.866(1) provides, in part, that a court may issue a stalking protective order against another person if

"(a)   The person intentionally, knowingly or recklessly engages in repeated and unwanted contact with the other person or a member of that person's immediate family or household thereby alarming or coercing the other person;

"(b)   It is objectively reasonable for a person in the victim's situation to have been alarmed or coerced by the contact; and

"(c)   The repeated and unwanted contact causes the victim reasonable apprehension regarding the personal safety of the victim or a member of the victim's immediate family or household."

"Contact" includes, among other things, "coming into the person's visual or physical presence, following the person, waiting outside the person's home, property, place of work or school, or sending or making written communications of any kind." *Pinkham v. Brubaker*, 178 Or App 360, 369, 37 P3d 186 (2001). If the contacts are expressive in nature, the person requesting the protective order must also prove that the contacts involve a threat that "instills in the addressee a fear of imminent and serious personal violence from the speaker, is unequivocal, and is objectively likely to be followed by unlawful acts." *State v. Rangel*, 328 Or 294, 303, 977 P2d 379 (1999).

■     In this case, there is no evidence of the repeated and unwanted contact that the statute requires. The record contains evidence of two contacts only. The first contact occurred on July 13. Although it is clear that, at least initially, petitioner asked respondent to leave, it is also clear that, eventually, he changed his mind and agreed that she could spend the night. There is no evidence that he was afraid of petitioner or that his agreement was coerced. Under the circumstances, we do not understand how that contact qualifies as "unwanted" within the meaning of the statute. The second contact occurred on July 14. With respect to that contact, the evidence shows that, although petitioner's mother told

respondent that she was no longer welcome, nothing suggests that petitioner himself told her that until he came home and she already was in the house. Moreover, even assuming that the contact was unwanted, it was the first such contact and cannot reasonably be regarded as "repeated" within the meaning of the statute.

We conclude that the trial court erred in issuing the stalking protective order.

Reversed.