Submitted January 21, reversed March 3, 2010

Maria Elisa PIKE,
*Petitioner-Respondent,*

*v.*

Norman Laverne KNIGHT,
*Respondent-Appellant.*

Umatilla County Circuit Court
CV081246; A140126

227 P3d 1221

Michael Breiling argued the cause for appellant. On the brief was Kara K. Davis.

No appearance for respondent.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

SCHUMAN, J.

## SCHUMAN, J.

In this appeal, respondent challenges the sufficiency of the evidence to support issuance of a permanent stalking protective order (SPO) against him. On *de novo* review, ORS 19.415;[1] *Hanzo v. deParrie*, 152 Or App 525, 537, 953 P2d 1130 (1998), *rev den*, 328 Or 418 (1999), we reverse.

At the time of the events giving rise to this case, respondent and petitioner had been friends for several years; petitioner worked in a restaurant where respondent was a daily patron, and their friendship apparently extended beyond business hours. Indeed, at one point, respondent told petitioner that he had made her a beneficiary in his will. Ultimately, however, petitioner became annoyed over respondent's persistence in alleging that she was having an affair with another man. According to petitioner, respondent went so far as to hire a private investigator to follow her. She also alleged that, on more than one occasion, she had observed respondent watching her; one of these contacts occurred when he parked outside of her workplace, and another occurred when he waited for her to leave a Wal-Mart parking lot and then followed her. As a result of these contacts, petitioner told respondent that she wanted to end their friendship. According to her testimony, respondent then threatened to bring an action against her for "slander and defamation of character."

On appeal, respondent argues that the facts recited above, even if they were accurate, are legally insufficient to support the issuance of the SPO. We agree. ORS 30.866(1) provides that a person may obtain a civil SPO against another person if:

"(a) The person intentionally, knowingly or recklessly engages in repeated and unwanted contact with the other person or a member of that person's immediate family or household thereby alarming or coercing the other person;

---

[1] ORS 19.415 was recently amended. Or Laws 2009, ch 231, § 2. The amendments apply to appeals in which the notice of appeal was filed on or after June 4, 2009. Or Laws 2009, ch 231, § 3. Because the notice of appeal in this case was filed before that date, we apply the 2007 standard of review.

"(b)   It is objectively reasonable for a person in the victim's situation to have been alarmed or coerced by the contact; and

"(c)   The repeated and unwanted contact causes the victim reasonable apprehension regarding the personal safety of the victim or a member of the victim's immediate family or household."

Definitions for this statute are provided in ORS 163.730. A "contact" is defined as, among other things, "[c]oming into the visual or physical presence of the other person" or "[s]peaking with the other person by any means." ORS 163.730(3)(a), (e). If the contact at issue involves speech, however, Article I, section 8, of the Oregon Constitution requires proof that the verbal contact constitutes a threat that "instills in the addressee a fear of imminent and serious personal violence from the speaker, is unequivocal, and is objectively likely to be followed by unlawful acts." *State v. Rangel*, 328 Or 294, 303, 977 P2d 379 (1999).

The evidence in this case falls far short of what the relevant statutes require. None of the verbal contacts communicated an unequivocal threat of violence, much less one that a person reasonably could have believed was imminent and likely to occur. And although we can imagine situations in which nonexpressive contacts such as lurking near places that a petitioner is known to frequent could cause a petitioner to feel apprehension regarding personal or family safety, the evidence in this case presents no such situations. More significantly, petitioner testified that she was annoyed and irritated, but she never testified that she felt alarmed or coerced. We have no doubt that petitioner's quality of life would be improved by judicially mandated insulation from respondent, but the stalking laws that might permit such a mandate in some cases do not do so in this one.

Reversed.