***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

Argued and submitted March 1, reversed October 26, 2022

H. D.,
*Petitioner-Respondent,*

*v.*

Joshua Phillip STENBECK,
*Respondent-Appellant.*

Douglas County Circuit Court
20SK02548; A175588

Kathleen E. Johnson, Judge.

Andy Simrin argued the cause for appellant. Also on the briefs were Andy Simrin PC and Craig M. Arnold.

Christopher W. Peterman argued the cause for respondent. Also on the brief were Keith D. Ropp and Christopher W. Peterman, Attorney at Law, P.C.

Before Shorr, Presiding Judge, and Mooney, Judge, and Pagán, Judge.

SHORR, P. J.

Reversed.

**SHORR, P. J.**

Respondent appeals from a judgment imposing a permanent stalking protective order (SPO) against him pursuant to ORS 30.866. He raises two assignments of error, contending that the trial court erred in grounding the SPO on speech-based contacts without determining whether they met the standard established in *State v. Rangel*, 328 Or 294, 977 P2d 379 (1999), and that the court erred by issuing the SPO. *See Delgado v. Souders*, 334 Or 122, 142 n 11, 46 P3d 729 (2002) (extending the reasoning in *Rangel* to civil stalking law). We agree with respondent that the trial court erred, conclude that petitioner did not meet the heightened *Rangel* standard, and, therefore, reverse.

Neither party has requested *de novo* review, and this is not a case in which such review is warranted. *See* ORAP 5.40(8)(c) (the court will exercise its discretion to review *de novo* "only in exceptional cases"). "We review the trial court's factual findings for any supporting evidence and its legal conclusions for legal error." *H. L. P. v. Jones*, 309 Or App 108, 109, 481 P3d 415 (2021). In addition, because the trial court issued the SPO, "we view the evidence and all reasonable inferences that may be drawn from it in the light most favorable to [petitioner] and assess whether, when so viewed, the record is legally sufficient to permit that outcome." *Id.* (internal quotation marks omitted).

To obtain an SPO under ORS 30.866, the civil stalking statute, a petitioner must establish by a preponderance of the evidence

"(1)   that the respondent engaged in repeated and unwanted contact with the petitioner;

"(2)   that the petitioner was subjectively alarmed or coerced by the contact and that such alarm or coercion was objectively reasonable;

"(3)   that the petitioner subjectively experienced apprehension about personal safety as a result of the contact and that such apprehension was objectively reasonable; and

"(4)   that the respondent acted with the requisite mental state."

*C. Q. R. v. Wafula*, 305 Or App 344, 352, 471 P3d 786 (2020) (internal quotation marks omitted).

ORS 163.730 contains definitions of certain terms that apply to the civil stalking statute, including, in subsection (3), a nonexclusive list of actions that qualify as "contact." The word "repeated" means "two or more times." ORS 163.730(7). In addition,

> "[t]he contact must be 'unwanted,' and it must cause 'alarm.' The contact must instill in the petitioner 'apprehension or fear resulting from the perception of danger.' ORS 163.170(1). 'Danger' in this context means 'a threat of physical injury, not merely a threat of annoyance or harassment.' [*K. R.*] *v. Erazo*, 248 Or App 700, 706-07, 274 P3d 214 (2012). To '"[c]oerce" means to restrain, compel or dominate by force or threat.' ORS 163.730(2)."

*H. L. P.*, 309 Or App at 113-14. "Each of the unwanted contacts, individually, must give rise to both subjective and objectively reasonable alarm or coercion." *J. C. R. v. McNulty*, 304 Or App 286, 288-89, 467 P3d 48 (2020).

When the contact involves speech—oral or written— "it must rise to the level of a threat to be considered a qualifying unwanted contact." *A. M. M. v. Hoefer*, 269 Or App 218, 223, 344 P3d 121 (2015); *see Rangel*, 328 Or at 303 ("If the contact in question amounts to communication by speech or writing, only a threat will be sufficient to 'cause apprehension or fear resulting from the perception of danger,' as ORS 163.730 requires.") As we recognized in *A. M. M.*,

> "[u]nder Article I, section 8, of the Oregon Constitution, unwanted contacts that involve speech are subject to a heightened standard of proof. To qualify as a predicate unwanted contact, any contact that involves speech must be a threat—that is, the sort of communication that instills in the addressee a fear of imminent and serious personal violence from the speaker, is unequivocal, and is objectively likely to be followed by unlawful acts."

269 Or App at 223 (internal quotation marks omitted). Protected speech can be relevant as context for other, nonexpressive contacts despite not qualifying itself as an unwanted contact. *H. L. P.*, 309 Or App at 114.

Given that legal framework, we turn to the specifics of this case. A detailed recitation of all of the underlying facts would not benefit the parties, the bench, the bar, or the public and we, therefore, provide only an overview of the facts necessary to explain our decision.

At the time petitioner filed her petition for an SPO in September 2020, she was 26 years old and respondent was 28 years old. Petitioner and respondent met at a dance class when petitioner was approximately 10 or 11 years old and then did not have contact again until years later. In May 2017, respondent began to contact petitioner online, first through LinkedIn and then via petitioner's email address. Between May 2017 and March 2020, respondent sent hundreds of emails that were bizarre and indicate an obsession with petitioner.[1] They contain various statements about religion, suicide, conspiracy theories regarding end times, political figures, having special powers, and visions. There are emails that express love for petitioner, state that respondent's future involves petitioner, and refer to various "paths," heaven, and death. Petitioner was living abroad during most of that time period but came home to Roseburg more than once. Petitioner and respondent had an in-person meeting at a Roseburg coffee shop in August 2018; respondent drove from his home in Prineville for that meeting. Respondent also left written correspondence in the mailbox at petitioner's family home at the end of December 2019 or beginning of January 2020. Petitioner told respondent to stop contacting her. Others—including law enforcement—told respondent to stop contacting petitioner. Nonetheless, he did not stop. Petitioner moved back to Oregon in September 2020 and applied for the SPO shortly thereafter.

The trial court held a hearing, which took place on more than one date, to determine whether a permanent SPO should issue. At the conclusion of the hearing, the court made several findings and ultimately concluded that the SPO was warranted. The court determined that the meeting at the coffee shop did not count as an unwanted contact,[2]

---

[1] Petitioner testified that there were over 800 emails, the last of which were sent in March 2020; prior to that, they had stopped for almost a year.

[2] That determination is supported by the record.

but that "there's so many e-mails that are clearly unwanted contact." The court concluded, in part, that it was not necessary to analyze the emails under *Rangel* "because the physical proximity on numerous occasions, combined with the sheer volume of contacts, are enough to be coercive in nature. They're enough to be alarming."

On appeal, respondent contends that the trial court erred by not applying the required heightened standard of proof to the emails under *Rangel* and subsequent case law. Further, respondent argues that, if the content of the emails is considered, they do not meet the constitutional standard to qualify as unwanted contacts.

We agree with respondent that the emails he sent to petitioner are protected speech under the Oregon Constitution and that the trial court erred in not considering whether they met the heightened standard. We have reviewed the record and agree with respondent that the emails do not meet the required standard—that is, the emails from respondent to petitioner do not contain an unequivocal threat of "imminent and serious personal violence" that was "objectively likely to be followed by unlawful acts." *A. M. M.*, 269 Or App at 223. There are no doubt troubling references in the emails to various "paths," including heaven and death. Even assuming that those are unequivocal threats of imminent and serious personal violence, there is no evidence in this record that respondent was objectively likely to follow up on those threats with unlawful acts.[3] To

_____

[3] As noted, under the *Rangel* standard, applying Article I, section 8, of the Oregon Constitution to stalking protective orders arising out of speech-based conduct, there must be evidence from which we can conclude that the threats are objectively likely to be followed by unlawful acts. That is a difficult standard for petitioner to meet and for a court to assess. In contrast, the Ninth Circuit in a closely divided *en banc* opinion has concluded that "true threats" are not protected speech under the United States Constitution:

"A true threat, that is one where a reasonable person would foresee that the listener will believe he will be subjected to physical violence upon his person, is unprotected by the first amendment.

"It is not necessary that the defendant intend to, or be able to carry out his threat; the only intent requirement for a true threat is that the defendant intentionally or knowingly communicate the threat."

*Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 290 F3d 1058, 1075 (9th Cir 2002), *cert den*, 539 US 958 (2003) (internal quotation marks and citations omitted).

the extent that the trial court concluded that, irrespective of their content, the sheer number of emails supported the issuance of an SPO, we conclude that was error. Although there are a huge number of emails, the number alone without further context could not give rise to an objectively reasonable apprehension about personal safety. ORS 30.866(1)(c). We also reject petitioner's contention that there are at least two qualifying contacts that are nonexpressive or otherwise not subject to *Rangel*.

In reaching our conclusion, we do not minimize the highly concerning nature of the voluminous number of emails that respondent sent to petitioner, nor the effect that they had on petitioner. We simply conclude that the emails do not meet the heightened standard applicable to speech-based contacts under *Rangel* that are necessary to qualify as unwanted contact. As a result, the circumstances here do not meet the requirements for an SPO.

Reversed.