242 November 22, 2023 No. 609

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

T. J. T.,
*Petitioner-Respondent,*

*v.*

Daniel W. BEAN,
*Respondent-Appellant.*

Marion County Circuit Court
22SK03666; A180320

Jennifer J. Brown, Judge Pro Tempore.

Argued and submitted October 13, 2023.

Jason E. Thompson argued the cause for appellant. Also on the brief was Thompson Law, LLC.

No appearance for respondent.

Before Aoyagi, Presiding Judge, and Joyce, Judge, and Jacquot, Judge.

JOYCE, J.

Reversed.

**JOYCE, J.**

Respondent appeals from a stalking protective order (SPO) entered against him, prohibiting him from contacting his neighbor. We review the trial court's factual findings for any supporting evidence and its legal conclusions for legal error, *A. M. M. v. Hoefer*, 269 Or App 218, 219, 344 P3d 121 (2015), and reverse.

As relevant to the issues on appeal, to obtain the SPO, the petitioner must establish by a preponderance of the evidence that (1) the petitioner was subjectively alarmed or coerced by repeated and unwanted contact and that (2) the alarm or coercion that the petitioner experienced was objectively reasonable. ORS 30.866(1).

Repeated means "two or more times." ORS 163.730(7). A "contact" may be physical, such as "[c]oming into the visual or physical presence of the other person," ORS 163.730(3)(a), or "[f]ollowing the other person," ORS 163.730(3)(b). A contact may also involve speech, such as "[s]peaking with the other person by any means," ORS 163.730(3)(e). Any speech-based contact must satisfy the standard articulated in *State v. Rangel*, 328 Or 294, 303, 977 P2d 379 (1999); that is, it must instill in the "addressee a fear of imminent and serious personal violence from the speaker, [be] unequivocal, and [be] objectively likely to be followed by unlawful acts."

When the petitioner relies on a contact that includes both expressive and nonexpressive conduct, the expressive conduct must meet the standard of a qualifying threat under *Rangel*. However, where the act that causes alarm or coercion involves nonexpressive conduct, the less stringent statutory standard applies. *See, e.g.*, *S. A. B. v. Roach*, 249 Or App 579, 584 n 3, 277 P3d 628 (2012) (concluding that the "nonspeech conduct" that was separable from the respondent's speech did not give rise to objectively reasonable "alarm").

Petitioner's evidence was legally insufficient to support an SPO. In granting the SPO, the trial court relied on the following contacts:

- On one occasion, respondent called petitioner—a transgender woman—a "faggot and a freak," and gestured at her with "finger guns as though he would shoot" her. As

he was doing so, petitioner "laughed" and when respondent asked why, she "said that it was because he thinks I'm a freak."

- On another occasion, respondent asked petitioner "what the hell" she was doing on a shared easement between their properties and asked her whether she wanted to go "back to jail."

- On a third occasion, respondent came to petitioner's garage where she was playing with her band and he told them to stop playing "or he would break everything."

Assuming that the first incident—in which respondent used homophobic/transphobic slurs and pointed "finger guns" at petitioner—qualifies as a contact under ORS 30.866, neither of the other two incidents do. Respondent's acts—both expressive and nonexpressive—were unquestionably "harassing and hostile." *M. F. v. Baker*, 325 Or App 787, 794, 530 P3d 142 (2023). That said, "offensive, hostile, and aggressive statements are not enough to satisfy the standard, nor are equivocal threats or threats that are not objectively likely to be acted upon." *S. A. B.*, 249 Or App at 585 (the respondent's offensive and hostile statements, including the statement, "We know what to do with your type," were insufficient to meet the *Rangel* standard); *see*, *e.g.*, *Goodness v. Beckham*, 224 Or App 565, 577-78, 198 P3d 980 (2008) (the respondent's repeated emails to the petitioner, including profanities and threats that "I'm going to get you back" and "you're going to pay" were insufficient to meet the *Rangel* standard because they did not unequivocally threaten violence). As explained in *Rangel*, "hyperbole, rhetorical excesses, and impotent expressions of anger or frustration" can be privileged even if they alarm the addressee. 328 Or at 303 (internal quotation marks omitted). This record does not contain evidence that respondent—in asking petitioner what she was doing, whether she wanted to go to jail, and threatening to break her band equipment—made any unequivocal threat of imminent and serious personal violence that he was likely to act upon. Accordingly, the record does not include evidence of repeated qualifying contacts.

Reversed.