502                          April 2, 2025                          No. 302

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

J. P.,
*Petitioner-Respondent,*

*v.*

HELEN GRACE HOLMES,
*Respondent-Appellant.*

Lane County Circuit Court
23SK05091; A184037

Karrie K. McIntyre, Judge.

Argued and submitted February 18, 2025.

George W. Kelly argued the cause and filed the brief for appellant.

No appearance for respondent.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

JOYCE, J.

Reversed.

**JOYCE, J.**

Respondent appeals from a stalking protective order (SPO) entered against her, prohibiting her from contacting petitioner, who is the current owner of a home that respondent used to own.[1] We review the trial court's factual findings for any supporting evidence and its legal conclusions for legal error, *A. M. M. v. Hoefer*, 269 Or App 218, 219, 344 P3d 121 (2015), and reverse.

As relevant to the issues on appeal, to obtain the SPO, the petitioner must establish by a preponderance of the evidence that (1) the petitioner was subjectively alarmed or coerced by repeated and unwanted contact and that (2) the alarm or coercion that the petitioner experienced was objectively reasonable. ORS 30.866(1), (7). Alarm means "to cause apprehension or fear resulting from the perception of danger," and danger refers to "a threat of physical injury, not merely a threat of annoyance or harassment." ORS 163.730(1); *S. A. B. v. Roach*, 249 Or App 579, 586, 277 P3d 628 (2012). Repeated means "two or more times." ORS 163.730(7). A "contact" may be physical, such as "[c]oming into the visual or physical presence of the other person," ORS 163.730(3)(a), or "[f]ollowing the other person," ORS 163.730(3)(b). A contact may also involve speech, such as "[s]peaking with the other person by any means," ORS 163.730(3)(e). Any speech-based contact must satisfy the standard articulated in *State v. Rangel*, 328 Or 294, 303, 977 P2d 379 (1999); that is, it must instill in the "addressee a fear of imminent and serious personal violence from the speaker, [be] unequivocal, and [be] objectively likely to be followed by unlawful acts."

When the petitioner relies on a contact that includes both expressive and nonexpressive conduct, the expressive conduct must meet the standard of a qualifying threat under *Rangel*. However, where the act that causes alarm or coercion involves only nonexpressive conduct, the less stringent statutory standard applies. *See, e.g.*, *S. A. B.* 249 Or App at 584 n 3 (concluding that the "nonspeech conduct" that was separable from the respondent's speech did not give rise to objectively reasonable "alarm").

---

[1] At the time of the incidents, respondent lived in a different city than petitioner.

Here, the evidence shows the following contacts between petitioner and respondent:

- Respondent walked several feet onto petitioner's driveway and said that she was "there to fight child trafficking."

- That same day, she drove her car back and forth in front of the house "a couple times."

- Two days later, petitioner saw respondent walk from petitioner's driveway to her car, drive off, return, roll down her window, and yell "I'm back!"

- That same day, respondent returned to petitioner's house and petitioner spoke to her in his yard; respondent said that she worked for Donald Trump, petitioner's neighbor is in the Ku Klux Klan, and repeated that she was there to fight child trafficking.

- The following day, petitioner heard a "loud bang" from the alley abutting petitioner's house, looked out the front window, and saw respondent walking from the alley to the driveway. Petitioner later realized that his electrical breaker box had had a "disconnect" removed, which disabled his heater wall unit.[2]

Petitioner testified that respondent had never made direct threats to physically harm him but that her actions made him feel "very unsafe." Respondent explained that her behavior—which occurred over a 10-day period—was attributable to hyperthyroidism, since resolved, which had caused her to suffer from a lack of sleep and delusions.

The trial court, after finding both petitioner and respondent to be credible, granted the stalking protective order based on the contacts described above.

We reverse. Even if, as the trial court appeared to determine, respondent removed a connection that rendered petitioner's heat inoperable and that constituted a qualifying contact, none of the other contacts met the requisite legal standard. ORS 30.866(1) (requiring "repeated" unwanted contacts); ORS 163.730(7) (repeated means "two or more times").

---

[2] Petitioner also testified about a contact on January 7th, but the court did not rely on that contact in its ruling and we thus do not address it further.

Understandably, respondent's acts apart from the electrical box incident—both expressive and nonexpressive—were concerning to petitioner; they were "harassing and hostile." *M. F. v. Baker*, 325 Or App 787, 794, 530 P3d 142 (2023). That said, "offensive, hostile, and aggressive statements are not enough to satisfy the standard, nor are equivocal threats or threats that are not objectively likely to be acted upon." *S. A. B.*, 249 Or App at 585 (the respondent's offensive and hostile statements, including the statement, "We know what to do with your type," were insufficient to meet the *Rangel* standard); *see, e.g.*, *Goodness v. Beckham*, 224 Or App 565, 577-78, 198 P3d 980 (2008) (the respondent's repeated emails to the petitioner, including profanities and threats that "I'm going to get you back" and "you're going to pay" were insufficient to meet the *Rangel* standard because they did not unequivocally threaten violence). As explained in *Rangel*, "hyperbole, rhetorical excesses, and impotent expressions of anger or frustration" can be privileged even if they alarm the addressee. 328 Or at 303 (internal quotation marks omitted).

This record does not contain evidence that respondent—in referencing working for Donald Trump, fighting child trafficking, and claiming that the neighbor is involved with the Ku Klux Klan—made any unequivocal threat of imminent and serious personal violence that she was likely to act upon. To the extent that those incidents involved nonspeech conduct separable from respondent's speech—walking onto petitioner's driveway and yard—we conclude that those actions did not give rise to "an objectively reasonable apprehension or fear of physical injury." *S. A. B.*, 249 Or App at 586 (respondent's act of spraying petitioners with a hose while they attempted to remove her fence did not give rise to objectively reasonable apprehension of physical injury). Accordingly, the record does not include evidence of repeated qualifying contacts.

Reversed.