700 January 28, 2026 No. 43

***This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

S. E. J. L.,
*Petitioner-Respondent,*

*v.*

A. G.,
*Respondent-Appellant.*

Clackamas County Circuit Court
24SK02912; A185641

S. E. J. L.,
*Petitioner-Respondent,*

*v.*

S. G.,
*Respondent-Appellant.*

Clackamas County Circuit Court
24SK02911; A185642

Ulanda L. Watkins, Judge.

Argued and submitted October 16, 2025.

Lindsey Burrows argued the cause for appellants. Also on the briefs was O'Connor Weber LLC.

No appearance for respondent.

Before Aoyagi, Presiding Judge, Egan, Judge, and Pagán, Judge.

EGAN, J.

In Case No. A185641, reversed. In Case No. A185642, reversed.

**EGAN, J.**

In these consolidated cases, respondents SG and AM, who is SG's daughter, challenge judgments imposing permanent stalking protective orders (SPOs) in favor of petitioner.[1] After a consolidated hearing, the court issued SPOs against respondents but declined to issue an SPO against MG, who is SG's husband.[2] Pursuant to petitioners' subsequent motion, the court issued supplemental judgments awarding petitioner attorney fees. On appeal, respondents contend that the trial court erred in entering the SPOs because the evidence did not satisfy the requirements of ORS 30.866. Respondents also challenge the award of attorney fees. We agree with respondents' argument regarding the SPOs' issuance and, for the reasons that follow, reverse the judgments issuing them. That obviates the need to address the assignments regarding attorney fees. *See* ORS 20.220(3) ("When an appeal is taken from a judgment under ORS 19.205 to which an award of attorney fees *** relates *** [i]f the appellate court reverses the judgment, the award of attorney fees *** shall be deemed reversed[.]").

*Standard of Review.* Respondents dispute the sufficiency of the evidence supporting the SPOs, and that issue is preserved. *See D. O. v. Richey*, 301 Or App 18, 27, 456 P3d 348 (2019) (a sufficiency challenge is preserved where the respondent's arguments alerted the trial court to the contention that the record did not meet the statutory requirements for an SPO). We consider the record in the light most favorable to petitioner, drawing all reasonable inferences in support of the orders, and assess whether a reasonable factfinder could conclude that the statutory criteria for the SPOs were met. *C. L. C. v. Cordell*, 318 Or App 654, 655, 508 P3d 73 (2022). We also limit our consideration to evidence of incidents in the two years preceding the filing of the petition. *C. J. R. v. Fleming*, 265 Or App 342, 351, 336 P3d 534 (2014).

*Background.* In July 2024, petitioner petitioned for stalking protective orders against respondents, SG and her

---

[1] The appeals in Case No. A185641 and Case No. A185642 have been consolidated only for purposes of this opinion and otherwise remain separate cases.

[2] The trial court held one hearing, addressing the allegations as to both respondents and MG, and issued SPOs against respondents.

daughter AM, as well as against MG. Petitioner had bought a house two homes away from SG's house in a rural neighborhood. Petitioner's and SG's houses are accessed by a shared driveway that several families use, and it runs over an easement that traverses both petitioner's and SG's property. AM no longer lives with her parents but visits often.

The parties' disagreements began shortly after petitioner obtained the keys to his new house. The disagreements initially involved the shared driveway, but they soon expanded to include to other neighborly annoyances. In October 2023, AM left an accusatory note on petitioner's property after he had asked the neighbors not to come onto it. In June 2024, AM emailed petitioner's mortgage company, which resulted in the mortgage company reviewing his account.

After petitioner had sought, and the court had issued, temporary SPOs against respondents, a different neighbor, Byers, confronted petitioner. Byers lives in the house on the other side of petitioner's house from SG's house and has a close relationship with MG and SG. Petitioner testified that his relationship with Byers was initially okay but that they had negative interactions after petitioner had asked Byers to stop crossing through his property.

Petitioner testified in general terms that, one day, shortly after the temporary SPOs were issued, Byers walked up and down the property line between his and petitioner's property with a gun and fired the gun into Byers's shed. Byers testified more specifically about the incident. He asserted that he had been in the woods on his property with SG and her grandson and had been bothered by petitioner's drone flying nearby, over Byers's property. About half an hour later, Byers came out of his shed and saw the drone 10 or 15 feet in the air, over the property line between petitioner's and his own property. Byers was alone; no one was with him. He testified that he went back into the shed, retrieved a rifle, and pointed it at the drone for four to five minutes. He did not testify about firing the rifle. Byers testified that he was acting on his own behalf, not on behalf of SG. Byers and petitioner were the only witnesses to testify about the incident.

At the end of the hearing, the trial court entered a permanent SPO against each SG and AM, but it denied an SPO against MG.

*Legal standard.* Stalking protective orders are issued pursuant to ORS 30.866(1), which requires proof of three elements:

> "A petitioner may bring a civil action in a circuit court for a court's stalking protective order or for damages, or both, against a respondent if:
>
> "(a)   The respondent intentionally, knowingly or recklessly engages in repeated and unwanted contact with the petitioner or a member of petitioner's immediate family or household thereby alarming or coercing the petitioner;
>
> "(b) It is objectively reasonable for a person in the petitioner's situation to have been alarmed or coerced by the contact; and
>
> "(c)   The repeated and unwanted contact causes the petitioner reasonable apprehension regarding the personal safety of the victim or a member of the petitioner's immediate family or household."

To prevail, a petitioner must establish, by a preponderance of the evidence, that: (1) the respondent engaged in at least two unwanted contacts with the petitioner or a member of the petitioner's immediate family or household within the preceding two years; (2) each contact gave rise to subjective alarm that was objectively reasonable; and (3) the contacts, when considered together, gave rise to objectively reasonable apprehension regarding the petitioner's personal safety or that of a household or family member. *C. J. R.*, 265 Or at 348-49. The statute also requires proof that the respondents acted with at least a reckless mental state. ORS 30.866; *C. Q. R. v. Wafula*, 305 Or App 344, 353, 471 P3d 786 (2020).

When the alleged contacts involve speech, constitutional protections are implicated. Only statements constituting a "threat" may qualify. *State v. Rangel*, 328 Or 294, 303, 977 P2d 379 (1999) ("If the contact in question amounts to communication by speech or writing, only a threat will be sufficient to 'cause apprehension or fear resulting from

the perception of danger,' as ORS 163.730 requires."); *Reitz v. Erazo*, 248 Or App 700, 705, 274 P3d (2012) ("[I]f a 'contact' involves speech, Article I, section 8, of the Oregon Constitution requires proof that it is a threat."). A threat is a communication that creates fear of imminent and serious personal violence, is unequivocal, and is objectively likely to be followed by unlawful action. *Rangel*, 328 Or at 303. It does not include hyperbole, rhetorical overstatement, or ineffectual expressions of anger. *Id*. Speech falling short of a "threat" under *Rangel* cannot independently serve as a qualifying contact, though it may be considered as contextual evidence for nonexpressive conduct. *Habrat v. Milligan*, 208 Or App 229, 237, 145 P3d 180 (2006).

If the petitioner satisfies the statutory requirements, a court must issue an SPO. Unlike time-limited protective orders, an SPO remains in effect indefinitely absent further court action. *See* ORS 30.866(2) (requiring the respondent to appear and show cause why a temporary order should not be continued on an indefinite basis).

*Analysis.* The question is whether there was sufficient evidence in the record to establish two qualifying contacts of petitioner by each respondent between July 23, 2022 and July 23, 2024. ORS 30.866; *C. J. R.*, 265 Or App at 348. We conclude that there was not.

ORS 30.866(1)(c) requires that the cumulative contacts give rise to objectively reasonable apprehension regarding petitioner's personal safety or the personal safety of petitioner's immediate family or household. *C. J. R.*, 265 Or App at 348. The contacts at issue here do not qualify. Our analysis requires individualized discussion of only two of the contacts between the parties; none of the other contacts contributes meaningfully to any apprehension regarding the personal safety of petitioner or his family.

First, AM's contact of petitioner's mortgage company did not give rise to any reasonable apprehension regarding personal safety. As we have explained in a similar context—where the respondent communicated false information to the petitioner's employer—that type of contact with a third party does not "allow[] an inference that

the unwanted contacts made it objectively reasonable to fear that [the] respondent would engage in violence or conduct that would put [the] petitioner (or her family) at risk of physical injury." *B. M. v. Deaton*, 307 Or App 763, 764-65, 479 P3d 347 (2020). That is true even when the "[r]espondent's behavior may well have been tortious, such that [the] petitioner may have had tort claims available against [the] respondent." *Id.*

Second, regardless of whether Byers' actions with his rifle might give rise to reasonable apprehension regarding the personal safety of petitioner or his family—a question that we do not decide—the evidence is insufficient to show that any contact with petitioner during that incident was contact by SG or AM. Byers and petitioner had had a contentious relationship since the time when petitioner told Byers to stay off his property, which happened before petitioner had obtained the temporary SPOs. Petitioner testified that Byers was close to SG and MG, and the record supports an inference that Byers was made more angry with petitioner than he already had been as a result of petitioner obtaining temporary SPOs. But those facts alone do not allow an inference that Byers was contacting petitioner on behalf of SG, let alone AM, during the incident. *See* ORS 163.730(3)(f) (defining "contact" to include "[c]ommunicating with the other person through a third person"). The only evidence in the record is to the contrary; Byers testified that it was his own frustration with petitioner that caused him to retrieve the rifle and that he had not done it on behalf of SG.

Thus, considered together, any contacts between SG and petitioner and AG and petitioner do not give rise to objectively reasonable apprehension regarding petitioner's personal safety or the personal safety of petitioner's immediate family or household. ORS 30.866(1)(c); *C. J. R.*, 265 Or App at 348. The trial court erred in entering the SPOs.

In Case No. A185641, reversed. In Case No. A185642, reversed.